[Civ. No. 2783. Third Appellate District.—November 7, 1924.]

JOSIE E. M. NIELSEN, Appellant, v. LUCY V. RICHARDS, etc., Respondent.

[1] SCHOOL LAW—OFFICE OF SUPERINTENDENT OF SCHOOLS—CONSTITUTIONAL LAW—CHARTERS.—The office of superintendent of schools which section 7½ of article XI of the constitution mentions as one of the offices that a county charter shall provide for, is the constitutional office of superintendent of schools created by section 3 of article IX of the constitution, which provides, "A superintendent of schools for each county shall be elected by the qualified electors thereof at each gubernatorial election," etc.

[2] ID.—POWERS AND DUTIES OF COUNTY SUPERINTENDENT OF SCHOOLS—PROVISIONS OF COUNTY CHARTER—GENERAL LAWS.—The provisions of a county charter framed pursuant to section 7½ of article XI of the constitution, which provisions relate to the powers and duties of county superintendent of schools, are subject to and controlled by general laws.

[3] ID.—SUPERVISING TEACHER—AUTHORITY OF SUPERINTENDENT TO EMPLOY—CONTRACTS.—Under subdivision 18 of section 1543 of the Political Code, which provides for what purposes the county superintendent of schools shall use the money allowed and apportioned under subdivision 3 of section 1858 of said code as an emergency and supervision fund, said county superintendent of schools is authorized to employ a person holding a certificate authorizing her to teach in the elementary and secondary schools of the state as supervising teacher in the schools of the county, and to agree with such person upon the compensation to be paid for her services.

[4] Id.—Teachers—Public Officers—Constitutional Law.—Neither teachers nor supervising teachers are public officers; and the authority given to the county superintendent of schools to fix the salary of supervising teachers does not constitute an unlawful delegation of power.

[5] Id.—Emergency and Supervision Fund Created by Subdivision 3, Section 1858, Political Code—Discretion of Superintendent. The purposes for which the "emergency and supervision fund" created by subdivision 3 of section 1858 of the Political Code may be used being clearly defined, the county superintendent of schools is not, therefore, given uncontrolled and unguided discretion in the expenditure of public funds, and it is not to be presumed that he will abuse the authority vested in him.

[6] Id.—Supervising Teacher—Contract of Employment—Designation of Fund for Payment of Salary—Surplusage.—Where a contract of employment of a supervising teacher by a county superintendent of schools contains the essential provisions that certain services are to be rendered and that compensation therefor shall be given at a specified rate, the further provision therein that payment for the services to be rendered shall be made "by money from the supervision fund of" the county may be disregarded, as the law designates the fund out of which payment shall be made.

[7] Id.—Services—Contracts—Performance.—Recovery can be had under a contract for services only upon performance of such services.

[8] Id. — Number of Teachers to be Employed — Construction of Subdivision 3, Section 1858, Political Code.—The term "one thousand four hundred dollars" is used in subdivision 3 of section 1858 of the Political Code as a convenient factor in computing the amounts to be apportioned to the several school districts and to the emergency and supervision fund and it has nothing to do with the number of teachers to be employed, either by the trustees of the districts or by the superintendent of schools.

[9] Id.—Requisition for Salary of Supervising Teacher—Authority of Superintendent to Draw.—A county superintendent of schools is authorized to allow and draw his requisition for the salary of a supervising teacher employed by him.

[10] Id.—Refusal of Auditor to Approve Claim—Mandamus—Discretion.—Where, in a proceeding in *mandamus* by a supervising

4.    Teachers as municipal officers, note, **Ann. Cas.** 1914D, 1236.

6.    Teacher's right to compensation as dependent on validity of contract, notes, **Ann. Cas.** 1913C, 732; **Ann. Cas.** 1917A, 254. See, also, 24 **R. C. L.** 614.

10.   Duties the performance of which may be compelled by *mandamus*, note, 125 **Am. St. Rep.** 492. See, also, 18 **R. C. L.** 126; 16 **Cal. Jur.** 804.

teacher employed as such by the county superintendent of schools to compel the county auditor to approve and audit the warrant issued by the county superintendent for petitioner's salary, the facts are all admitted and but one conclusion can be drawn therefrom, and that in favor of the petitioner, the auditor has no discretion to refuse to issue his warrant.

[11] ID.—MANDAMUS.—Where one has a substantial right which may be enforced by *mandamus*, and there is no other plain, speedy, and adequate remedy in the ordinary course of law, he is entitled as a matter of right to the writ.

[12] ID.—ENTRY OF SIMILAR JUDGMENTS—INVALIDITY OF SECOND JUDGMENT.—In such proceeding, where the trial court, after having entered judgment against petitioner, entered a second judgment against her to the same effect as the first, and the first judgment was a complete determination of the cause, the court was without jurisdiction to render the second judgment, and it was, therefore, void.

---

(1) 35 Cyc., p. 867.  (2) 35 Cyc., p. 867.  (3) 35 Cyc., p. 1080.
(4) 35 Cyc., p. 1077.  (5) 35 Cyc., p. 1080.  (6) 35 Cyc., p. 1080.
(7) 35 Cyc., p. 1105.  (8) 35 Cyc., p. 1101.  (9) 35 Cyc., p. 1104.
(10) 35 Cyc., p. 1105.  (11) 38 C. J., p. 549, sec. 18.  (12) 38 C. J., p. 926, sec. 699.

APPEAL from judgments of the Superior Court of Butte County. H. D. Gregory, Judge. Reversed.

The facts are stated in the opinion of the court.

Ware & Ware for Appellant.

Edward T. Bishop, County Counsel, J. H. O'Connor, Assistant County Counsel, and Roy W. Dowds, Deputy County Counsel, *Amici Curiae*, in Support of Appellant's Position.

Wm. E. Rothe, District Attorney, and C. W. Johnson, Assistant District Attorney for Respondent.

FINCH, P. J.—The trial court sustained the respondent's demurrer to the petition herein and entered judgment denying the petition. At the hearing on the demurrer the

---

11. Writ of *mandamus*, when allowable, note, 89 **Am. Dec.** 728. See, also, 18 **R. C. L.** 132; 16 **Cal. Jur.** 784.

parties filed an agreed statement of facts and stipulated that the court might consider the same "for the purpose of deciding the above entitled matter." The following facts appear in such agreed statement:

C. H. Nielsen is "the duly appointed, qualified and acting county superintendent of schools of the County of Butte" and respondent is the county auditor thereof. August 31, 1923, C. H. Nielsen, as such county superintendent, and petitioner executed the following instrument:

"I, C. H. Nielsen, Superintendent of Schools, Butte County, State of California, hereby appoint Mrs. Josie E. M. Nielsen as supervising teacher in the schools of Butte County. for the term ending June 1, 1924, at an annual salary of Three thousand three hundred ($3300) Dollars ($2700 of which is designated as salary and $600 as traveling expenses), one-ninth of which salary shall be payable on the first of each calendar month following the first of September until nine payments shall have been made. The above payments shall be made in requisitions drawn upon the county auditor by me upon the Supervision fund of Butte County.

"(Signed)    C. H. NIELSEN,

"Superintendent of Schools.

"Dated Sept. 1, 1923.

"I hereby accept the conditions stated above and agree to serve as supervising teacher in the Butte County schools for the term specified above.

"(Signed) JOSIE E. M. NIELSEN."

At all times mentioned in the complaint Josie E. M. Nielsen was a duly qualified teacher, holding a certificate authorizing her to teach in the elementary and secondary schools of the state. She at once entered upon the discharge of her duties of "supervising the work of teaching in the rural schools" of the county "and ever since said date has faithfully and regularly performed each and every duty pertaining to said position, if any such position exists, and has faithfully and regularly discharged the duties and obligations" of the aforesaid agreement of employment. October 1, 1923, C. H. Nielsen, as such superintendent of schools, executed and delivered his "order and warrant" purporting to authorize the payment of petitioner's salary for the preceding month, in accordance with the terms of the agreement, and petitioner

presented the same to respondent and requested respondent to "allow, approve and audit" the same, but respondent refused to do so. There were at all times sufficient moneys in the "emergency and supervision fund" of the county, apportioned under the provisions of section 1858, subdivision 3, of the Political Code, to pay petitioner's said demand.

Butte County is operating under a freeholders' charter, framed pursuant to the provisions of article XI, section 7½, of the constitution. (Stats. 1917, p. 1791; Stats. 1923, p. 1554.) Article VII of the charter relates to "county schools." Section 1 thereof provides for the election of a "board of county school trustees" consisting of one member from each supervisorial district of the county. Section 3 provides that the board of county school trustees shall "appoint a county superintendent of schools" who must be "a certified teacher, having a regular elementary or high school certificate of the state of California, who has had not less than five years' experience as a teacher or educational administrator, or both; two years of which shall have been in the five years immediately preceding his appointment. He need not be an elector of Butte County, but must reside in the county during his term of office. The term of office of the superintendent of schools shall be two years for the first appointment, unless sooner removed or recalled, and if reappointed the superintendent shall hold office for four years, unless sooner removed or recalled." Section 5 provides that, "in addition to the duties prescribed by general laws," the county superintendent of schools shall discharge certain other duties. Such additional duties, however, are not inconsistent or in conflict with the duties of a county superintendent of schools as provided by the general laws of the state. Section 7 provides: "The general law shall apply to and govern the conduct of the schools of the County of Butte and of the officers provided for the superintendence thereof, except as otherwise provided in this charter." The state constitution provides:

"A superintendent of schools for each county shall be elected by the qualified electors thereof at each gubernatorial election; provided, that the legislature may authorize two or more counties to unite and elect one superintendent for the counties so uniting." (Art. IX, sec. 3.)

It is apparent that the qualifications, manner of selection and term of office of county superintendent of schools prescribed by the charter are not the same as those provided by the constitution. Respondent argues that by reason of such differences the office, or "position," of "county superintendent of schools," under the charter "is not the . . . office of superintendent of public schools created by the Constitution, and upon which alone the powers contained in the Political Code are cast." Section 7½ of article XI requires that a county charter must be "consistent with and subject to the Constitution." In *People* v. *Elkus*, 59 Cal. App. 396, 404 [211 Pac. 34, 38], this court, in construing a like provision relative to city charters, said: "This restriction applies to and qualifies every power conferred upon the chartered city. Notwithstanding such restriction, however, if the municipality is given express authority by the constitution to do a particular thing contrary to some general provision thereof, 'the more specific provision controls the general.' (*Martin* v. *Election Commrs.*, 126 Cal. 404, 411 [58 Pac. 932, 935].)" Section 7½ not only authorizes but expressly requires that county charters "shall provide . . . for sheriffs, county clerks, treasurers, recorders, license collectors, tax collectors, public administrators, coroners, surveyors, district attorneys, auditors, assessors and superintendents of schools, for the election or appointment of said officers, or any of them, for the times at which and the terms for which, said officers shall be elected or appointed, and for their compensation, or for the fixing of such compensation by boards of supervisors, and, if appointed, for the manner of their appointment." The foregoing provisions specifically authorize a county to provide in its charter for the manner of selection and term of office of county superintendent of schools. If it be conceded that the provisions of the charter relative to the qualifications for the office are unauthorized, it does not follow that the other provisions relating to the office are void or that the office is other than that created by the constitution. There is no contention that Nielsen does not have all the qualifications prescribed by the constitution and laws of the state.

[1] From a consideration of all the provisions of section
7½ it clearly appears that the office of superintendent of
schools mentioned therein is the constitutional office of super-
intendent of schools created by article IX, section 3. Section
7½ requires that county charters ''shall provide . . . for
the powers and duties of boards of supervisors and all other
county officers; . . . provided, that the provisions of such
charters relating to the powers and duties of boards of super-
visors and all other county officers shall be subject to and
controlled by general laws. . . . Whenever any county has
framed and adopted a charter, and the same shall have been
approved by the legislature, as herein provided, the general
laws adopted by the legislature in pursuance of sections four
and five of this article, shall, as to such county, be super-
seded by said charter as to matters for which, under this
section it is competent to make provision in such charter,
and for which provision is made therein, except as herein
otherwise expressly provided.'' Section 4 therein referred
to has no bearing upon the question under consideration.
Section 5 provides: ''The legislature, by general and uni-
form laws, shall provide for the election or appointment,
in the several counties, of boards of supervisors, sheriffs,
county clerks, district attorneys, and such other county,
township, and municipal officers as public convenience may
require, and shall prescribe their duties and fix their terms
of office. . . . '' The office of superintendent of schools is
not mentioned in section 5, nor is it included in the general
language thereof, for it would be illogical to conclude that
such general provisions were intended to authorize the legis-
lature to provide for the ''election or *appointment*'' and
term of an officer whose election and term of office are spe-
cially provided for by the constitution. [2] Whatever un-
certainty, therefore, may exist as to whether charter provi-
sions prescribing the duties of other officers supersede the
general laws upon the same subject matter (*Woolwine* v.
*Superior Court,* 182 Cal. 388 [188 Pac. 569]), it is clear
that such provisions relating to the powers and duties of
county superintendent of schools are ''subject to and con-
trolled by general laws.'' This conclusion is in harmony
with other provisions of the constitution relating to public
schools and with the construction thereof by the legislature
and the courts. ''The legislature shall provide a system of

common schools." (Const., art. IX, sec. 5.) "Article IX of the Constitution makes education and the management and control of the public schools a matter of state care and supervision. . . . The legislature is directed, in section 5, to provide for 'a system of common schools.' . . . The term 'system' itself imports a unity of purpose as well as an entirety of operation, and the direction to the legislature to provide 'a' system of common schools means *one* system which shall be applicable to all the common schools within the state." (*Kennedy* v. *Miller,* 97 Cal. 429, 431 [32 Pac. 558]; *Burch* v. *Colombet,* 104 Cal. 347, 353 [38 Pac. 45]; *San Francisco* v. *Hyatt,* 163 Cal. 346, 352 [125 Pac. 751]; *Stern* v. *City Council of Berkeley,* 25 Cal. App. 685, 689 [145 Pac. 167].) Having reached the conclusion that Nielsen holds the office of superintendent of schools created by the constitution and that his duties as such are "subject to and controlled by general laws," whatever additional duties may be provided by the charter, the provisions of the charter may be dismissed from further consideration herein.

The first subdivision of section 1858 of the Political Code provides, among other things, that the county superintendent shall ascertain the number of teachers to which each district is entitled by calculating one teacher for every thirty-five, or fraction thereof, of pupils in average daily attendance for the next preceding school year, and "one additional teacher for each three hundred pupils in average daily attendance," and that "he must calculate one additional teacher for the county . . . for each five hundred pupils or a major fraction thereof in average daily attendance in the aggregate in those school districts of the county . . . in each one of which there were less than three hundred pupils in average daily attendance . . . for the next preceding school year."

The third subdivision provides: "One thousand four hundred dollars shall be apportioned to each school district for each and every teacher allowed to it; *provided,* that one thousand four hundred dollars shall be apportioned to each county or city and county for each teacher allowed on the aggregate average daily attendance of pupils in attendance in the various school districts, each of which had less than

three hundred pupils in average daily attendance for the next preceding school year and the funds thus apportioned shall constitute an emergency and supervision fund under the control of the superintendent of schools of the county or city and county, and shall be used by him as provided by law.''

The eighteenth subdivision of section 1543 provides: ''The superintendent of schools of the county, or city and county, shall use the money allowed and apportioned under section one thousand eight hundred fifty-eight, third, of this code, as an emergency and supervision fund, for the employment of duly qualified teachers to supervise the work of teaching in the school districts of the county, or city and county, which had less than three hundred pupils in average daily attendance during the next preceding school year, for the payment of the salaries of teachers employed by him to visit, at least twice a month, and to instruct pupils and to direct the education of pupils who live more than five miles from the nearest public school in the district of which they are residents, and such other pupils residing in the school district as may not be able to attend the public school for reasons which are deemed good and sufficient by the superintendent of schools of the county, or city and county in which such pupils reside; and for employing and paying the salary of teachers when unexpected emergencies arise, requiring the services of teachers and no other means of supplying teachers are available.''

[3] There can be little doubt of the superintendent's authority to employ petitioner to perform the services provided for in the contract of employment and to agree with her upon the compensation to be paid therefor. The law does not contemplate that the ''emergency and supervision fund'' shall remain idle, and no officer other than the superintendent is authorized to expend the same. The corresponding additional money apportioned to every district having an average daily attendance of three hundred pupils, or more, is under the control of the trustees thereof, and is probably intended to provide, in whole or in part, for the cost of supervising the work of teaching in the particular district to which the money is apportioned. The trustees of the smaller districts, however, are given no control over the additional moneys apportioned to the county for the

supervision of the "work of teaching" in such districts, but the law provides that such fund shall be "under the control of the superintendent of schools" and that he "shall use" the same "for the employment of duly qualified teachers to supervise the work of teaching" in the smaller schools. [4] Neither teachers nor supervising teachers are public officers. This is clear, not only from the duties to be performed, but from the terms of the sections of the Political Code under consideration, which authorize the "employment" of supervising teachers. Public officers are elected or appointed rather than employed. The argument, therefore, that a construction of those sections in accordance with appellant's contention would show an unlawful delegation of power to the superintendent to fix the salary of public officers is not well taken. It does not appear in what manner the superintendent can use any part of such money "for the employment" of a supervising teacher without entering into an agreement of employment with such teacher. The duties of the superintendent in the use of the moneys in the emergency and supervision fund are similar to those of school trustees in the use of moneys apportioned to their districts. It is a matter of legislative discretion whether the control of either fund shall be committed to a single officer or to a board. The fund under the control of the superintendent is not only limited but small in amount. [5] The purposes for which the moneys therein may be used are clearly defined. The superintendent is not, therefore, given uncontrolled and unguided discretion in the expenditure of public funds. It is not presumed that he will abuse the authority vested in him. "Laws are not made upon the theory of the total depravity of those who are elected to administer them; and the presumption is that municipal officers will not use these small powers villainously or for purposes of oppression and mischief." (*In re Flaherty*, 105 Cal. 558, 562 [27 L. R. A. 529, 38 Pac. 981, 982]; *In re Holmes*, 187 Cal. 640, 647 [203 Pac. 398].) The principle of law announced in *Tarpey* v. *McClure*, 190 Cal. 593, 601 [213 Pac. 983], is controlling here. It is there said: "The provision in section 1 authorizing the state engineer to employ such engineers, attorneys, and other assistants as he may deem necessary, and to fix their compensa-

tion, does not contravene the rule announced in *Farrell* v. *Board of Trustees*, 85 Cal. 408 [24 Pac. 868], for two reasons: First, because the assistants here provided for are not officers but mere employees; second, because the discretion as to the number to be employed is not unguided, as it was in the Farrell case." Laws have been held valid giving administrative officers of the state much greater power and broader discretion in the use of public funds than is here vested in the county superintendent of schools. (*Ryan* v. *Riley*, 65 Cal. App. 181 [223 Pac. 1027], and cases cited therein.)

[6] The contract of employment provides that payment for the services to be rendered shall be made "by money from the supervision fund of Butte County." Respondent contends that there is no such fund known to the law. Conceding that the contention is sound, the provision of the contract referred to may be disregarded. The essential provisions of the contract are that certain services are to be rendered and that compensation therefor shall be given at the rate specified. The law designates the fund, and the only fund, out of which payment shall be made.

The contract provides that petitioner shall be paid "an annual salary of three thousand three hundred ($3,300) dollars ($2,700 of which is designated as salary and $600 as traveling expenses)." The evident intention of the parties to the contract, inartificially expressed in the parenthetical clause, is that the petitioner shall be paid an annual salary of $3,300, she to pay her own traveling expenses, estimated to be $600 a year. It is a matter of common knowledge that the expense of traveling from school to school during the year, in a county as large as Butte, must be heavy. Respondent contends that under the contract, if valid, the petitioner will be entitled to the full year's salary regardless of whether she works or not or whether she is able to work. [7] It is elementary that recovery can be had under a contract for services only upon performance of such services. In this case the parties have stipulated that ever since the first day of September, 1923, the petitioner has "faithfully and regularly performed each and every duty pertaining to said position" of supervising teacher.

Respondent suggests, rather by way of illustration than as argument, that petitioner is the wife of the superintendent and that, since her earnings are community property, the husband is interested in the contract of employment, contrary to the provisions of section 920 of the Political Code, which provides that county officers "must not be interested in any contract made by them in their official capacity." Since it does not appear from the petition or the stipulated facts that the parties to the contract are husband and wife, the question thus raised cannot be decided on this appeal.

Respondent seems to contend that the "spirit of the law" requires the employment of a teacher for every $1,400 apportioned to the emergency and supervision fund of the county, and that therefore the superintendent abused his discretion in agreeing to pay one teacher a salary of $3,300 a year. [8] It is clear from a reading of section 1858 that the term "one thousand four hundred dollars" is used in the third subdivision thereof as a convenient factor in computing the amounts to be apportioned to the several districts and to the emergency and supervision fund and that it has nothing to do with the number of teachers to be employed, either by the trustees of the districts or by the superintendent.

[9] The most serious question raised by respondent is whether the superintendent is authorized to allow and draw his requisition for petitioner's salary. Section 4041 of the Political Code provides: "The boards of supervisors, in their respective counties shall have jurisdiction and power, under such limitations and restrictions as are prescribed by law: . . . 12. To examine, settle, and allow all accounts legally chargeable against the county, except salaries of officers, and such demands as are authorized by law to be allowed by some other person or tribunal, and order warrants to be drawn on the county treasurer therefor." Section 4091 provides: "The auditor must issue warrants . . . on the treasurer, in favor of all persons entitled thereto, in payment of all claims and demands chargeable against the county, which have been legally examined, allowed, and ordered paid by the board of supervisors. The auditor must also issue warrants on the treasurer for all debts and demands against the county, when the amounts are fixed by law, or are authorized

by law to be allowed by some person or tribunal other than the board of supervisors.''

The school funds are not county moneys in the ordinary sense, which would permit their use for general county purposes, but they are particular funds set aside for specific purposes. While the supervisors are authorized and required to levy taxes for the support of the schools, they are given no voice in the control or expenditure of the moneys raised for school purposes, unless it be in the single instance under consideration. On the other hand, the control and expenditure of all school moneys, other than such as are under the control of school trustees and boards of education, are placed in the hands of the county superintendent of schools, to be used and ordered paid by him without any action on the part of the board of supervisors. Where trustees fail or neglect to do so, the superintendent may employ a janitor for the school and pay therefor by issuing "his requisition upon the county school fund apportioned to such district" (sec. 1543, subd. 13); appoint a teacher and "draw his requisition upon the county auditor, who shall draw his warrant upon the fund of such district for the expense incurred" (sec. 1545); repair school buildings, provide suitable outhouses and "adorn the ground with fruit and ornamental trees and shrubbery, . . . and pay for it on his requisition upon the county auditor, who shall draw his warrant payable out of any money to the credit of the district" (sec. 1546); purchase a flag and "draw his warrant on the current expense fund of the district in payment" therefor (sec. 1546). The county superintendent is authorized to "draw his requisition upon the county auditor, who shall draw his warrant on the unapportioned county school fund to pay the expense of the county institute." (Sec. 1564.) In the use of the moneys in the institute and library funds "warrants may be drawn by the auditor upon the request of the county superintendent." (Sec. 1565.) "The county superintendent shall draw his requisition on the county auditor who shall draw his warrant on the unapportioned county school fund to pay the expenses of holding trustees' meetings." (Sec. 1566.) In certain cases of children residing more than five miles from a schoolhouse, "the superintendent of schools may provide an extra teacher for,

or may provide transportation for such children to the public school. The salaries of such teachers and the cost of such transportation shall be paid out of the county unapportioned fund." (Sec. 1577, subd. 1.) "The superintendent shall determine all outstanding indebtedness" of a lapsed district, "and shall draw his requisition upon the county auditor in payment thereof." (Sec. 1582, subd. 7.)

In the light of this uniform practice of authorizing the county superintendent of schools to use and allow claims against all school funds not under the control of school trustees or boards of education, it is not difficult to discover the legislative intent in the comprehensive terms of sections 1858 and 1543, placing the "emergency and supervision fund under the control of the superintendent of schools" and providing that he "shall use the money . . . for the employment of duly qualified teachers to supervise the work of teaching" in the smaller districts, "for the payment of the salaries of teachers employed by him" to instruct certain pupils unable to attend school, and "for employing and paying the salary" of an emergency teacher. If it was the intention to depart from the legislative policy which has been followed for many years and place the allowance of demands against this particular school fund in the hands of the board of supervisors under the general provisions of section 4041, singularly inappropriate language was employed to manifest that intention. The intention to authorize the superintendent of schools to employ supervising teachers and draw his requisition in payment of their salaries is reasonably certain from the terms of sections 1858 and 1543, and this conclusion is fortified by a consideration of the other sections of the Political Code to which reference has been made herein. The requisition alone, however, is not sufficient to authorize the county treasurer to pay the amount thereof. "The treasurer must . . . disburse the county moneys and all other money placed in his custody by official authority only on county warrants issued by the county auditor, except on settlement with the state." (Pol. Code, sec. 4101, subd. 6.) It is contended that "the duty of the auditor with respect to this kind of a claim is discretionary and not merely ministerial. With respect to such a duty *mandamus* will not lie to compel the officer to draw the warrant unless

an abuse of discretion has been shown.'' (*Cook* v. *Reid,* 39 Cal. App. 453, 457 [183 Pac. 820].) **[10]** Where, as here, the facts are all admitted and but one conclusion can be drawn therefrom, and that in favor of the claimant, the auditor has no discretion to refuse to issue his warrant. (*Dufton* v. *Daniels,* 190 Cal. 577, 580 [213 Pac. 949].) **[11]** Where one has a substantial right which may be enforced by *mandamus,* ''and there is no other plain, speedy, and adequate remedy in the ordinary course of law, he is entitled as a matter of right to the writ.'' (*Gay* v. *Torrance,* 145 Cal. 144, 148 [78 Pac. 540]; *Inglin* v. *Hoppin,* 156 Cal. 483 [105 Pac. 582].)

**[12]** On the fourteenth day of November, 1923, the court sustained respondent's demurrer to the petition. The petitioner declined to amend and, on the following day, judgment was entered denying the prayer of the petition. On the twenty-first day of November, 1923, a second judgment was entered to the same effect as the first. Petitioner appealed from both judgments. Since the first judgment was a complete determination of the cause, the court was without jurisdiction to render the second, and it is, therefore, void. To avoid confusion, however, it is deemed proper to clear the record of both judgments.

The judgments are reversed, with direction to the trial court to overrule the demurrer to the petition.

Plummer, J., and Hart, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 5, 1925.