[Civ. No. 16912. Fourth Dist., Div. One. June 7, 1979.]

EVELLE J. YOUNGER, as Attorney General, etc., et al.,
Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF SAN DIEGO COUNTY et al.,
Defendants and Appellants.

**COUNSEL**

Donald L. Clark, County Counsel and Lloyd M. Harmon, Jr., Chief Deputy County Counsel for Defendants and Appellants.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, Susan J. Orton, Deputy Attorney General, Edwin L. Miller, Jr., District Attorney, and Richard D. Huffman, Chief Deputy District Attorney, for Plaintiffs and Respondents.

## Opinion

**WIENER, J.**—Since 1933, San Diego County has operated under a charter providing for "home rule." (Approved by the Legislature Jan. 17, 1933, Stats. 1933, res. ch. 10, p. 2814; see Cal. Const., art. XI, §§ 3, 4; see also former art. XI, § 7½.) In November 1976 the voters of San Diego County amended the charter by adding section 14.1 which placed a limitation on the number of consecutive terms a county elective official could serve. The amendment provides that no person is eligible to serve more than three consecutive four-year terms or two consecutive six-year terms in the same county-elected office.[1] We conclude the power of a county operating under a charter permitting local self-government is nevertheless restricted to the authority granted by the state Constitution. We hold section 14.1 unconstitutional for it is an enactment in excess of the county's authority.

*Procedural and Factual Background*

At its regular meeting on August 10, 1976, the San Diego County Board of Supervisors approved and ordered the submission of proposed San Diego County Charter section 14.1 to the electorate of San Diego County at the general election to be held on November 2, 1976. At the election, a majority of the voters, 315,356 to 218,335, voted in favor of the proposal. After the voters approved the amendment, the California Attorney General and the San Diego County District Attorney filed their second amended complaint against the Board of Supervisors of the County of San Diego and Robert T. Denny, Registrar of Voters of the County of San Diego, for declaratory and equitable relief. Plaintiffs and defendants filed motions for summary judgment; plaintiffs' motion was granted. Defendants appeal from the judgment declaring section 14.1 of the Charter of the County of San Diego unconstitutional, an unlawful exercise of lawful authority and permanently enjoining the defendants

---

[1] Section 14.1 provides: "No person shall be eligible to serve as an elective County Officer in the same elective office for more than three (3) successive four-year elective terms or, if elected for six-year terms, for more than two (2) successive six-year elective terms. Any person appointed or elected as an elective County Officer to fill an unexpired term shall, however, be eligible to serve three (3) successive four-year elective terms or, if elected for six-year terms, two (2) successive six-year elective terms, upon the expiration of the unexpired term for which he was appointed or elected. This section shall become operative on the 15th day of January, 1977 and shall apply to any person serving as an elective County Officer on that date; provided, however, that the provisions of this section shall not apply to any person, other than a member of the board of supervisors, holding a County elective office on November 2, 1976."

from entering section 14.1 in the charter and from enforcing it. We affirm the judgment.

## A CHARTER COUNTY HAS ONLY THOSE POWERS AUTHORIZED BY THE CALIFORNIA CONSTITUTION

Article XI, section 4 of the California Constitution currently directs that county charters shall provide for:

"(a) A governing body of 5 or more members, elected (1) by district or, (2) at large, or (3) at large, with a requirement that they reside in a district. Charter counties are subject to statutes that relate to apportioning population of governing body districts.

"(b) The compensation, terms, and removal of members of the governing body. If a county charter provides for the Legislature to prescribe the salary of the governing body, such compensation shall be prescribed by the governing body by ordinance.

"(c) An elected sheriff, other officers, their election or appointment, compensation, terms and removal.

"(d) The performance of functions required by statute.

"(e) The powers and duties of governing bodies and all other county officers, and for consolidation and segregation of county officers, and for the manner of filling all vacancies occurring therein.

"(f) The fixing and regulation by governing bodies, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches, and other persons to be employed, and for the prescribing and regulating by such bodies of the powers, duties, qualifications, and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal.

"(g) Whenever any county has framed and adopted a charter, and the same shall have been approved by the Legislature as herein provided, the general laws adopted by the Legislature in pursuance of Section 1(b) of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided.

"(h) Charter counties shall have all the powers that are provided by this Constitution or by statute for counties."[2]

Relying on *Reuter* v. *Board of Supervisors* (1934) 220 Cal. 314, 326-327 [30 P.2d 417], defendants contend the intent behind the constitutional charter provisions was to extend the option of "home rule" to counties, the right of self-government over local and county affairs, and thus permit county charters to "contain any provision which relates to county self-government and which is not prohibited by the California Constitution or which is not a matter of statewide concern where the state has occupied the field." Defendants' premise relating to "home rule" is correct. Their quoted conclusion regarding the scope of a charter county's authority is not.

The general purpose underlying the constitutional charter provisions was to extend to counties the option of home rule. (*Ibid.*) ▉ " 'Home Rule' as used here means the right of the populace of a local area to create . . . their own local governments, define its powers, describe the boundaries within which it is to exist, and prevent interference by the state government with what they have created"; however, the breadth of this power of self-government is embraced "within [the] limits laid down by the state constitution and . . . state statutes." (Brooks, *The Metropolis, Home Rule, and the Special District* (1959) 11 Hastings L.J. 110, 111.) As this court stated in *Williams* v. *McClellan* (1953) 119 Cal.App.2d 138, 141 [259 P.2d 12] (quoting *Whelan* v. *Bailey* (1934) 1 Cal.App.2d 334, 335-337 [36 P.2d 709], overruled on other grounds in *Estate of Miller* (1936) 5 Cal.2d 588, 591 [55 P.2d 491]): " '[S]uch charters are authorized and may be framed for the purpose of giving a certain local control over the means of carrying out governmental functions in such counties, with the limitation that anything in the charters, so authorized, shall be consistent

---

[2]In construing the scope of the power of a charter county as authorized by the California Constitution and general state laws, reliance is made upon case precedent dated before the adoption, on June 2, 1970, of the current article XI. This reliance is proper as article XI, section 13, provides:

"The provisions of Sections 1(b) (except for the second sentence), 3(a), 4, and 5 of this Article relating to matters affecting the distribution of powers between the Legislature and cities and counties, including matters affecting supersession, shall be construed as a restatement of all related provisions of the Constitution in effect immediately prior to the effective date of this amendment, and as making no substantive change.

"The terms general law, general laws, and laws, as used in this Article, shall be construed as a continuation and restatement of those terms as used in the Constitution in effect immediately prior to the effective date of this amendment, and not as effecting a change in meaning."

▉

with the Constitution and shall relate only to matters authorized by that fundamental law. While a county is thus authorized to provide for a measure of self-government, this authorization must be and is confined to providing for such functions as are properly governmental in their nature and which are consistent with our general scheme of government.' "

■ "It is elementary law that a charter provision relating to county officials is valid only if authorized by the state Constitution." (*Galli* v. *Brown* (1952) 110 Cal.App.2d 764, 777 [243 P.2d 920]; see also *Williams* v. *McClellan, supra,* 119 Cal.App.2d at p. 141.) ■ Since counties constitute merely political subdivisions of the state (Cal. Const., art. XI, § 1, subd. (a); *Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 242 [138 Cal.Rptr. 101]; *Byers* v. *Board of Supervisors* (1968) 262 Cal.App.2d 148, 155 [68 Cal.Rptr. 549]), they have independently only such legislative authority that has been expressly conferred by the Constitution and laws of the state. If the latter sources are silent in regard to the delegation of such authority, the authority must still rest with the Legislature. (*Simpson* v. *Payne* (1926) 79 Cal.App. 780, 785-786 [251 P. 324].) ■ However, if a charter provision is properly authorized, then it supersedes general state laws in conflict, but only to the extent it is not limited by the Constitution. (*Wilkinson* v. *Lund* (1929) 102 Cal.App. 767, 770 [283 P. 385].) For, it is without dispute that local rules or regulations relating to matters which a county is constitutionally empowered to regulate by charter supersede general state laws on the subject, except as to matters covered by general law where "(a) the local legislation attempts to impose additional requirements [citation], or (b) the subject matter is one of state concern, and the general law occupies the entire field [citation], or (c) the subject matter is of such statewide concern that it can no longer be deemed a municipal affair [citation]." (*In re Hubbard* (1964) 62 Cal.2d 119, 127 [41 Cal.Rptr. 393, 396 P.2d 809], overruled on other grounds in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63 [81 Cal.Rptr. 465, 460 P.2d 137].)

Therefore, a charter county has only those powers and can enact within its charter only those provisions authorized by the Constitution. These include those enumerated in article XI, section 4, *supra.* Further, in light of the language of subdivision (h) of section 4, a charter county has all powers provided for counties under the general laws as well, including those powers "necessarily implied from those expressed." (Gov. Code, § 23003.) We review the provision in controversy with the foregoing in mind.

### The California Constitution Does Not Authorize San Diego County to Establish Additional Qualifications for Candidacy for County Elected Office

■ Defendants urge section 14.1 is authorized by section 4, subdivision (c), of article XI which directs the county charter to provide for "other officers, their election or appointment, compensation, terms and removal." They rely specifically upon the words "terms and removal" noting the breadth and scope of former section 7½ of article XI, which read in pertinent part:

"It shall be competent, in all charters, framed under the authority given by this section to provide, in addition to any other provisions allowable by this Constitution, and the same shall provide, for the following matters:

"1. For boards of supervisors and for the constitution, regulation and government thereof, for the times at which and the terms for which the members of said board shall be elected, for the number of members, not less than three, that shall constitute such boards, for their compensation and for their election, either by the electors of the counties at large or by districts; provided, that in any event said board shall consist of one member for each district, who must be a qualified elector thereof; and

"2. For sheriffs, county clerks, treasurers, recorders, license collectors, tax collectors, public administrators, coroners, surveyors, district attorneys, auditors, assessors and superintendents of schools, for the election or appointment of said officers, or any of them, for the times at which and the terms for which, said officers shall be elected or appointed, and for their compensation, or for the fixing of such compensation by boards of supervisors, and, if appointed, for the manner of their appointment. . . ."

Our interpretation of the statute starts with an examination of the words themselves to determine the intent of the Legislature. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224].) ■ "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" (*Id.,* at pp. 230-231.)

■ The Constitution differentiates between elected county officials and nonelected personnel. As to the latter, under article XI, section 4, subdivision (f), the county can fix and regulate "the powers, duties,

*qualifications,* and compensation of such persons, the time of which, and the terms for which they shall be appointed, and the manner of their appointment and removal." (Italics added.) Further, section 1, subdivision (b), of article XI directs the county governing body to "provide for the number, compensation, *tenure,* and appointment of employees." (Italics added.) The exclusion of the words "qualifications" and "tenure" from the grant of powers to charter counties regarding county officers and the specific inclusion of the power to set "qualifications" and "tenure" for nonelected employees discloses an intent by the framers of the Constitution to retain statewide control over the qualifications of the former while releasing such control over the latter. This intent for statewide control over the qualifications of elected county officers is also indicated by the Legislature's enactment of Government Code section 24001 et seq. relating to eligibility of county elected officers.

Charter section 14.1 reads that "no person shall be *eligible* to serve as an elective County Officer in the same elective office. . . ." (Italics added.) The word "eligible" in this context means " 'capable of being chosen—the subject of selection or choice.' " (*Samuels* v. *Hite* (1950) 35 Cal.2d 115, 116 [216 P.2d 879], quoting *Searcy* v. *Grow* (1860) 15 Cal. 117, 121.) Thus the requirement of not having been elected for two prior six-year terms or three prior four-year terms is imposed as an additional, but unauthorized, qualification for candidacy.

■ We also reject defendants' argument that the words "terms" and "tenure" are synonymous. Since no uniform meaning has been assigned to the word "term" as it is used in the Constitution and related statutes, it has become necessary to interpret the word on a case-by-case analysis so as to effectuate the intended statutory scheme pertaining to the offices under examination. (*Barber* v. *Blue* (1966) 65 Cal.2d 185, 187-188 [52 Cal.Rptr. 865, 417 P.2d 401].) In the context of the plural use of the word "terms," it reflects the singular meaning of the prescribed period for which an officer has been elected and may serve, not his incumbency. (*Chenoweth* v. *Chambers* (1917) 33 Cal.App. 104, 107 [164 P. 428]; *Harrold* v. *Barnum* (1908) 8 Cal.App. 21, 25 [96 P. 104].) "It is, therefore, not to be confused with the tenure of office . . . ." (*Holbrook* v. *Board of Directors, etc.* (1937) 8 Cal.2d 158, 161 [64 P.2d 430].)

We also reject defendants' effort to rely upon the term "removal" as the source of the authority for the imposition of the tenure limitation. ■ "Removal" is defined in the context used as " 'the act of a person or body having lawful authority thereto, in depriving one of an

office to which he was appointed or elected.' " (*Lotts* v. *Board of Park Commrs.* (1936) 13 Cal.App.2d 625, 631 [57 P.2d 215], quoting Webster's New Internat. Dict. (1931).) Even through torturous interpretation contrary to the plain meaning of the words, section 14.1 cannot be construed as a removal provision.

■ We conclude charter section 14.1, a qualification provision imposing a restriction upon the eligibility of elected county officials to seek reelection for the same office, is unconstitutional since it constitutes an act in excess of a charter county's authority as conferred upon the governmental entity by both the Constitution and general state laws. (See *Nielsen* v. *Richards* (1924) 69 Cal.App. 533, 538 [232 P. 480].)

*Disposition*

The judgment is affirmed.

Brown (Gerald), P. J., and Ehrenfreund, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 1, 1979.

---

*Assigned by the Chairperson of the Judicial Council.