[No. G012952. Fourth Dist., Div. Three. Oct. 9, 1992.]

RICHARD T. POLIS, Plaintiff and Respondent, v.
CITY OF LA PALMA et al., Defendants and Appellants.

COUNSEL

Rutan & Tucker, Joel D. Kuperberg and John L. Fellows III for Defendants and Appellants.

Ralph M. Agnello and Mark S. Rosen for Plaintiff and Respondent.

OPINION

SILLS, P. J.—Plaintiff Richard T. Polis was elected to the La Palma City Council in 1984, and reelected in 1988. With the 1992 election looming, Polis decided to run again; he took out nomination papers and, after receiving the requisite number of signatures, presented them to the La Palma City Clerk. The clerk refused to file the papers, however, citing La Palma Initiative Ordinance No. 82-1, which limits city council members to two 4-year terms.[1] Polis then successfully petitioned the superior court for a writ of mandate compelling the clerk to accept his nomination papers. The City of La Palma and its clerk (collectively the City) appeal. Prior to briefing, Polis requested that the City's appeal not operate to stay the superior court judgment. We granted this request; thus, we directed the City to place Polis's name on the November 1992 ballot in La Palma. For the reasons that follow, we affirm the judgment.

DISCUSSION

Term limits are not a new idea; in fact, some of the original 13 colonies had them prior to the Declaration of Independence. (See Note, *Congressional*

---

[1] Initiative Ordinance No. 82-1 was adopted by vote of the residents of La Palma on April 13, 1982, and provides in pertinent part: "La Palma City Council person [*sic*] shall not serve more than two consecutive terms (each term is four years) in office and no person who has been appointed to the office of Councilperson for more than two years shall be eligible for more than one additional term."

*Term Limits: Unconstitutional by Initiative* (1992) 67 Wash. L.Rev. 415, 417.) And term limits are enjoying something of a renaissance today; witness the passage of Proposition 140 in the November 1990 election, which imposed term limits on state legislators and various other state officials. (See generally *Legislature* v. *Eu* (1991) 54 Cal.3d 492, 501-502 [286 Cal.Rptr. 283, 816 P.2d 1309].) But we are not concerned here with the pro's and con's of term limits. As the City correctly observes, this appeal presents a narrow issue of law: Does state law preempt the power of general law cities to impose term limits on local elected officials?

Two prior Court of Appeal decisions have dealt with this question. In *Younger* v. *Board of Supervisors* (1979) 93 Cal.App.3d 864 [155 Cal.Rptr. 921], the court struck down a voter-approved amendment to the San Diego County Charter which imposed term limits on elected county officials. The key to *Younger* is its conclusion that a term limit would render an incumbent *ineligible* for office if he or she had already served the maximum number of terms. Government Code section 24001[2] sets forth the eligibility requirements for county office, and the *Younger* court found that section 24001 expressed a legislative intent to preempt local regulation aimed at adding further eligibility requirements. (*Younger, supra,* 93 Cal.App.3d at p. 872.)

*Younger* also found preemptive intent from article XI, section 4 of our Constitution. That provision draws a distinction between nonelected county personnel and elected county officials; it allows county charters to set the qualifications of the former, but not the latter. This dichotomy led the *Younger* court to conclude that the Constitution envisioned statewide control over the qualifications of elected local officials. (*Younger, supra,* 93 Cal.App.3d at pp. 871-872.)

*Younger* was followed in *Steinkamp* v. *Teglia* (1989) 210 Cal.App.3d 402 [258 Cal.Rptr. 265], a case which the City conceded is on "all fours" with the present appeal. In *Steinkamp*, a South San Francisco city ordinance limited council members to two terms. Just as in *Younger*, there was a Government Code provision—section 36502—which set forth eligibility requirements for local offices in a general law city such as South San Francisco. (Significantly, La Palma is also a general law city.) The *Steinkamp* court held that section 36502, along with the statutes at issue in *Younger*, established a legislative intent "to preempt local regulation of eligibility for

---

[2]All statutory references are to the Government Code unless otherwise specified. Section 24001 provides in pertinent part: "Except as otherwise provided in Sections 27550.1 and 27641.1 of this code or in this section, . . . a person is not eligible to a county or district office, unless he or she is a registered voter of the county or district in which the duties of the office are to be exercised at the time that nomination papers are issued to the person or at the time of the person's appointment."

election to local governing bodies, whether they are charter counties or general law cities." (210 Cal.App.3d at p. 404.)

We realize that *Younger* and *Steinkamp* are not binding on us. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 772, pp. 740-741.) Nonetheless, the City would be required to present compelling reasons before we declined to follow those decisions.

■ Not surprisingly, the City's first salvo is what it calls "the national term-limitation movement." It cites *County of Alameda* v. *Sweeney* (1957) 151 Cal.App.2d 505, 513 [312 P.2d 419] for the proposition that "legislative enactments" should be construed to take into account changed conditions and the growing needs of the people. The City contends: "If ever there was an expression of 'changed conditions' and 'growing needs of the people,' the national term-limitation movement would seem to be a classic example." Were we construing constitutional provisions, such as those to which the *County of Alameda* court was referring, the City's argument could conceivably have some validity. However, we are concerned here with *statutes*; indeed, whole statutory schemes. Interpretation of statutes is not something that is subject to the whims of the latest public opinion poll. We are therefore not persuaded to part company with *Younger* and *Steinkamp* simply because it might now be fashionable to do so.

The City's second argument is based on section 36812, which states in pertinent part: "After incorporation, the city council is judge of the qualifications of its members . . . ." The City correctly observes that neither *Younger* nor *Steinkamp* addressed section 36812; further, it contends that section 36812 shows there is no "intent for statewide control over the qualifications" of local elected officials, the linchpin of *Younger* and *Steinkamp*. However, the City reads too much into the statute. The key word in section 36812 is "judge"; that word implies a factual dispute, here as to the qualifications of a potential council member. For example, if there were a question as to whether Polis actually resided in La Palma, or whether he was old enough to serve, it would be up to the city council to sit as a fact finder and resolve the issue. But section 36812 grants no power to a city council to change the qualifications for an elected office. (See *Powell* v. *McCormack* (1969) 395 U.S. 486 [23 L.Ed.2d 491, 89 S.Ct. 1944] [although Congress has the right to determine the qualifications of its members under art. I, § 2 of the federal Constitution, it had no power to add an "ethics"

qualification to constitutional requirements to be a member of the House of Representatives].) If a city council has no power to change the qualifications for local office, obviously the populace of a city is similarly constrained.[3]

The City next contends that, because section 36502 is phrased in the "negative," it is not meant as an exclusive listing of qualifications for local office. Section 36502 provides in relevant part: "A person is not eligible to hold office as a councilman . . . unless he is at the time of assuming such office an elector of the city, and was a registered voter of the city at the time nomination papers are issued to the candidate . . . ." The City asserts that, had the Legislature intended to preempt the field, it would have phrased the statute in a positive manner, such as: "A person is eligible to hold office if he or she is a registered voter and an elector of the city," etc. The City cites no authority to support its argument that a "negatively phrased" statute infers a legislative intent not to preempt. Significantly, in *Powell* v. *McCormack, supra*, 395 U.S. 486, the United States Supreme Court declined to infer such an intent from the negatively phrased qualifications clause (U.S. Const., art. I, § 2).[4] We decline to infer a "nonpreemptive" intent to section 36502 simply because it is phrased in the negative.

The City also relies on *Gluck* v. *County of Los Angeles* (1979) 93 Cal.App.3d 121 [155 Cal.Rptr. 435] for the proposition that implied preemption is "disfavored." Of greater significance to us is *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644 [209 Cal.Rptr. 682, 693 P.2d 261], not cited by the City, where our Supreme Court stated: "We will be reluctant to infer legislative intent to preempt a field covered by municipal regulation where there is a significant local interest to be served that may differ from one locality to another." (*Id.* at p. 707, citing *Gluck, supra.*) We would be "reluctant" to imply preemption in this case as well if there were something about cities like La Palma which provided them with a greater interest in term limits than other cities. We are unable to identify that certain "something." Simply stated, there is nothing peculiar about La Palma to suggest that interest in term limits is more significant there than elsewhere. This is not like *Gluck*, where sensitivities to X-rated newspapers may vary from county to county. Nor are we faced with a situation like *Fisher*, which involved a rent control ordinance that is greatly affected by demographics and local property values.

---

[3]The City's reliance on *Dawson* v. *Superior Court* (1910) 13 Cal.App. 582 [110 P. 479] is misplaced. *Dawson* dealt with a city council's authority to determine contested elections, again a factfinding task. It has no application to qualifications for office, much less changing those qualifications.

[4]Article I, section 2 of the United States Constitution provides in relevant part: "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen."

Finally, the City attacks the findings of preemption made in *Younger* and *Steinkamp*, claiming those courts incorrectly found implied preemption. There is no rigid test to determine implied preemption; the best statement probably emanates from a case decided by our Supreme Court 30 years ago: "In determining whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the 'whole purpose and scope of the legislative scheme' and are not required to find such intent solely in the language used in the statute." (*In re Lane* (1962) 58 Cal.2d 99, 102-103 [22 Cal.Rptr. 857, 372 P.2d 897]; accord, *Gluck* v. *County of Los Angeles, supra,* 93 Cal.App.3d at p. 131.) For the reasons expressed in *Younger* and *Steinkamp,* we believe the subject of local term limits meets the *Lane* standard. In addition, and as Polis points out, a number of other statutes, predominantly collected in the Government Code, make it clear that the Legislature wishes to "micromanage" city councils. For example, section 36513 provides that if a council member misses all council meetings for a period of 60 days, the office becomes vacant, unless the council meets less than once a month, in which case the period is 70 days. Similarly, state law provides that a council member forfeits his or her office upon conviction of any felony and certain misdemeanors (§ 1770, subd. (h); see also § 3001 [intoxication] and Pen. Code, § 165 [bribery]). Nothing in the statutes allows city councils to remove members for other reasons. In sum, we find no error in the preemption analysis of either *Younger* or *Steinkamp,* and agree that the Legislature has expressed its desire to preempt the field of local regulation of term limits.

DISPOSITION

The judgment is affirmed.

Moore, J., and Wallin, J., concurred.