25641.  MADDOX et al. v. FORTSON et al.

ARGUED JANUARY 14, 1970—DECIDED JANUARY 26, 1970—
REHEARING DENIED JANUARY 29, 1970.

*Tully M. Bond, Sharpe, Sharpe, Hartley & Newton, T. Malone Sharpe, E. Alex Davis,* for appellants.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, William L. Harper, R. J. Castellani, Assistant Attorneys General, Robert S. Reeves, Henry M. Henderson, Andrew A. Smith, O'Kelley, Hopkins & Van Gerpen, William C. O'Kelley, Steve J. Kyle, Heyman & Sizemore, Lamar Sizemore, Paul L. Hanes,* for appellees.

ALMAND, Chief Justice.  Lester G. Maddox individually and seven other named persons on behalf of themselves and as a group for all electors and registered voters qualified to vote in the general election in the State of Georgia, filed their complaint in Fulton Superior Court against Ben W. Fortson, Jr., as Secretary of State and as Chairman of the State Election Board and numerous other persons as officials of political parties.

The prayers of the complaint were that the court declare the constitutional prohibition (Art. V, Sec. I, Par. I) of the 1945 Constitution which provides: "The Governor serving at the time of the adoption of this Constitution and future Governors shall not be eligible to succeed themselves and shall not be eligible to hold office until after the expiration of four years from the conclusion of his term of office," be declared violative of the equal protection clause of the 14th Amendment and the 1st Amendment to the Federal Constitution.

The complaint alleges: That Lester G. Maddox, the incumbent Governor of the State of Georgia, desires to be a candidate for Governor of the State for a term beginning in January, 1971, in the Democratic Party Primary and the general election to be held in 1970. That though he is fully qualified in other respects, the defendants in their official State and party positions will refuse to permit him to be a candidate in the primary and general election in 1970 because of the constitutional prohibition above quoted.

It was further alleged that an actual controversy exists between the plaintiffs and the defendants and this action is au-

thorized by the Declaratory Judgment Act (*Code Ann.* § 110-1101 et seq.) and a decision is needed to remove the uncertainty as to the right of Maddox to be a candidate for Governor in the 1970 elections and to provide the co-plaintiffs of Maddox an equal and fair opportunity to vote for Maddox in said elections.

To this complaint the several defendants filed their answers and moved to dismiss the plaintiffs' complaint on the ground that it failed to state a claim upon which relief could be granted.

When the cause came on for a hearing the court found that the challenged provision of the Constitution of Georgia prohibiting an incumbent governor from being eligible to run for another term did not violate the equal protection clause of the 14th Amendment, or the 1st Amendment to the Federal Constitution. The motion to dismiss was sustained. The appeal is from this order.

1. In Williams v. Rhodes, 393 U. S. 23, 30 (89 SC 5, 21 LE2d 24) (1968), the court said: "In determining whether or not a state law violates the equal protection clause, we must consider the facts and circumstances of the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification."

In order "to consider the facts and circumstances" under which Art. V, Sec. I, Par. I of the Constitution of 1945 was adopted, we look backward in the State's constitutional history to find the interests which the State claims to be protecting to determine why the people in adopting their Constitution prohibited an incumbent Governor serving a term of four years from being eligible to the office until after the expiration of four years from the conclusion of his term of office.

Article 23 of Georgia's first Constitution (1777) provided a one-year term for the Governor and made him ineligible to the office for two years after his service of one year.

Article 2 of the 1789 Constitution provided a term of two years with no prohibition as to holding the office in the future.

Article 3, Section 1, Par. 1 of the 1861 Constitution contained the same provision as the 1789 Constitution.

Article 3, Section 1, Par. 1 of the 1865 Constitution provided a term of two years for the Governor but made him ineligible

for re-election after expiration of a second term for a period of four years.

Article 4, Section 1 of the 1868 Constitution fixed the term at four years with no prohibition for service of a future term.

Article 5, Section 1, Par. 2 of the 1877 Constitution provided a term of two years but that the incumbent at the end of a second term was ineligible for four years. This article of the Constitution was amended in 1941 (Ga. L. 1941, p. 86) to provide for a four-year term and that at the end of the term the incumbent Governor would be ineligible for election to the succeeding term.

In 1945 the Commission to draft a new Constitution recommended to the General Assembly the continuation of the four-year term as provided in the 1789 Constitution, as amended, but left out of the proposal the provision as to ineligibility. The General Assembly refused to follow this proposal and put in the Constitution the same provisions of the 1877 Constitution as amended in 1941. The present provision under attack here is found in Art. V, Sec. I, Par. I (*Code Ann.* § 2-3001) of the Georgia Constitution (1945).

So it will be seen that in the 192 years of the history of the State Constitution the people of Georgia have for 107 years had in their Constitution a provision making ineligible the election of an incumbent Governor for another term at the succeeding election after serving four years.

An examination of the Constitutions of the several States discloses that twenty-four States of the Federal Union have restrictions as to eligibility after service of one or two terms similar to Georgia: Alabama, Alaska, Delaware, Florida, Indiana, Kentucky, Louisiana, Maine, Maryland, Mississippi, Missouri, Nebraska, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Virginia, and West Virginia (The Book of the States, 1968-69, pp. 125, 133).

In 1951, the 22nd Amendment to the Federal Constitution was approved. This amendment precludes an incumbent President from seeking the office for a third time and it is more stringent than the Georgia provision which permits an incumbent Governor to seek the office after an interval of four years.

2. Throughout the history of the Federal Union since the adoption of the Constitution of the United States in 1789, it has been recognized that each State in the Federal Union has the sole right to determine the qualifications of those seeking State or local offices and the qualifications of voters in State elections as long as the laws of a State did not deny to the citizens of the State their rights under the Federal Constitution.

In Taylor and Marshall v. Beckham, 178 U. S. 548, 570 (20 SC 890, 44 LE 1187) (1899), it was said: "'It is obviously essential to the independence of the States, and to their peace and tranquility, that their power to prescribe the qualifications of their own officers, the tenure of their offices, the manner of their election, and the grounds on which, the tribunals before which, and the mode in which, such elections may be contested, should be exclusive, and free from external interference, except so far as plainly provided by the Constitution of the United States."

In Wilson v. North Carolina, 169 U. S. 586, 594 (18 SC 435, 42 LE 865) (1897), the court said: "In its internal administration the State (so far as concerns the Federal Government) has entire freedom of choice as to the creation of an office for purely state purposes, and of the terms upon which it shall be held by the person filling the office." "So long as our present dual form of government endures, the States, it must never be forgotten, 'are as independent of the general government as that government within its sphere is independent of the States.' Collector v. Day, 11 Wall. 113, 124." Brush v. Commissioner, 300 U. S. 352, 364 (57 SC 495, 81 LE 691, 108 ALR 1428).

The right to vote as intended to be protected by the 14th Amendment refers to the right to vote as established by the laws and Constitution of the State, which has broad powers to determine the conditions under which such right of suffrage may be exercised, such as residence requirements, age or previous criminal record, absent of course, any discrimination which the 14th Amendment condemns. McPherson v. Blacker, 146 U. S. 1 (13 SC 3, 36 LE 869) (1892); Lassiter v. Northampton County Board of Elections, 360 U. S. 45, 50 (79 SC 985, 3 LE2d 1072). In the recent case of Williams v. Rhodes, 393 U. S. 23,

34, supra, it was said that "The State is left with broad powers to regulate voting, which may include laws relating to the qualification and functions of electors."

In Fortson v. Morris, 385 U. S. 231, 234 (87 SC 446, 17 LE2d 330) (1967), (a case of which in some respects the instant case is a collateral descendant) it was held: "There is no provision of the United States Constitution or any of its amendments which expressly or impliedly dictates the method a State must use to select its Governor."

3.  Having considered the general principles of constitutional law that are relevant to this case we now consider the specific grounds upon which it is asserted the eligibility clause of the State Constitution which forbids the plaintiff Maddox, the incumbent Governor, from seeking election to the office for a second term until after four years, violates the equal protection clause of the 14th Amendment to the Federal Constitution.

It is argued that since there is no Constitutional prohibition against other State officers elected by the people running to succeed themselves, that the constitutional provision under attack constitutes an invidious discrimination to the injury of Maddox.

The answer to this contention is that the constitutional and the statutory powers of the Governor are such that the people, in placing the ineligibility clause in the Constitution as to the Governor, had the right to put the office of Governor in a class by itself. As pointed out in the brief of the Attorney General, "The Governor alone has the power to veto bills passed by the General Assembly (Ga. Code Ann. § 2-3015). He has the power to fill vacancies in office. (Ga. Code Ann. § 2-3013). He is by law a member of approximately 35 bureaus, boards, commissions and committees. (Georgia Official and Statistical Register, 1965-66, p. 25). He is ex-officio Director of the Budget Bureau (Ga. Code Ann. § 40-403) which administers the State's $850,000,000 budget. All payments from the State's treasury are made upon his warrant. (Ga. Code Ann. § 40-204). He can suspend the payment of taxes until the General Assembly convenes. (Ga. Code Ann. § 40-205). He can call the General Assembly into special session. (Ga. Code Ann. § 2-1603). He is the commander-in-chief of the National Guard. (Ga. Code

Ann. § 2-3010). Other constitutional officers report to him. (Ga. Code Ann. § 2-3017)."

There is a reasonable and justifiable difference between the office of Governor and other statehouse elected officers and it cannot be said to amount to invidious discrimination.

This Constitutional provision does not apply solely to Maddox, the incumbent Governor, but is applicable to all others who serve one term as Governor. The people of Georgia, by their votes in approving the Constitution of 1877, the 1941 Amendment and the 1945 Constitution, have decided that it is to the best interest of the State that one who has served a term of four years as Governor, must wait four years before he can again seek the office. We fail to see how this provision of the Constitution works to the disadvantage of the incumbent Governor.

We do not give any weight to the contention that the provision of the Constitution under attack does not apply to the incumbent Governor because he was elected by the General Assembly and not by the people of Georgia.

His term of office is four years and the prohibition against his serving a second term for four years is not based on how he was elected, but on the fact of his service for one term. The fact that he is now seeking a declaration of his right to seek another term is a recognition that his service of his present term is a result of his election under the provisions of the Constitution.

Accordingly, we hold that the provision of Art. V, Sec. I, Par. I of the 1945 Constitution under attack does not offend the provisions of Amendments 1 and 14 of the Constitution of the United States.

4. Having held such provision is not violative of the Federal Constitution, it follows that petitioner Maddox, being subject to the provisions of Art. V, Sec. I, Par. I of the 1945 Constitution therefore would not be eligible to offer in the primary and general elections of 1970 as a candidate for Governor. It thus becomes unnecessary to decide whether such provisions violate the right of the plaintiffs, as voters, under the 1st and 14th Amendments to the Federal Constitution. Their right to vote

is to vote only for a candidate who is eligible to hold the office of Governor. So, the "one man, one vote" cases as Reynolds v. Sims, 377 U. S. 533 (84 SC 1362, 12 LE2d 506); Gray v. Sanders, 372 U. S. 368 (83 SC 801, 9 LE2d 821); and Baker v. Carr, 369 U. S. 186 (82 SC 691, 7 LE2d 663), are not relevant.

*The judgment of the trial court is affirmed. All the Justices concur. Felton, J., concurs specially.*

FELTON, Justice, concurring specially. 1. I concur in the judgment insofar as the seven appellants, exclusive of Governor Maddox, are concerned, for the reason that, in my opinion, the decision in Fortson v. Morris, 385 U. S. 231, supra, is controlling on the question whether any of their claimed constitutional rights were violated by the provision of the Georgia Constitution attacked in this action by these appellants. I cannot see much difference between being deprived of the right to vote for or against a candidate for Governor in this case and the Fortson case. In neither case could the people elect a Governor by their direct votes.

2. As to Governor Maddox's contentions, I concur in the judgment of the trial judge for the reason that the prohibition against Governor Maddox's succeeding himself is a provision in the Georgia Constitution. In such case there is a presumption that the people had a compelling reason or compelling reasons for the inhibition against a Governor's succeeding himself. The burden of proof was on Governor Maddox to show the absence of such reasons, and no evidence was introduced to carry this burden. There were reasons argued why the inhibition was justified, but they amounted to no more than argument and little more than figments of the imagination. The burden would be on the State to show a compelling reason for the inhibition if a statute were attacked as being unconstitutional (Williams v. Rhodes, 393 U. S. 23, supra) rather than a provision of a State constitution.