Kimberly A. **MIYAZAWA,** Plaintiff,

v.

**CITY OF CINCINNATI, et al., Defendant.**

No. C–1–92–311.

United States District Court, S.D. Ohio, W.D.

May 6, 1993.

Eric Kearney, Cincinnati, OH, for plaintiff.

Mark Yurick, Cincinnati, OH, Philip Zorn, Jr., Cincy, OH, for defendant.

### ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon motions for cross summary Judgment (Docs. 15, 16, 17) and the replies thereto (Docs. 18, 19). The Court notes in passing that no person affected by the change in charter has filed any pleadings indicating opposition to such amendments.

### FACTUAL BACKGROUND

The material facts are not at issue in this case. The Parties filed a Stipulation of Facts (Doc. 14) on Feb. 8, 1993.

At the general election held November 5, 1991, the electors of the City of Cincinnati were given an opportunity to repeal Section 2 of Article IX of the Charter of the City of Cincinnati and adopt Sections 2, and 12 of Article IX, which limited a member of city council to four consecutive two year terms. This Issue was approved by a majority of voters and became a portion of the City Charter. On April 7, 1992, the Plaintiff herein filed an action in District Court asserting that the adoption of that charter amendment violated her rights under the First and Fourteenth Amendments to the U.S. Constitution.

### OPINION

In order to consider this matter in its appropriate context it, would be advisable to note some basic principles of law that apply herein.

In the State of Ohio the Constitution has established certain rights of municipalities. Under Article XVIII, Section 3:

Municipalities shall have the authority to exercise all powers of self government....

That Article further provides for what is referred to as "Home Rule." Subsection 7 provides:

Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this Article, exercise thereunder *all powers of local self government.* (Emphasis added)

The import of Article XVIII provides in any event that a municipal corporation shall have all powers of local self government. The only distinction being that a municipality may adopt a charter under Section 7.

The City of Cincinnati adopted a charter pursuant to Section 7 and has for the last seventy years conducted its municipal affairs

in accordance with that charter. It has with some frequency amended and changed the method of electing members of City Council. The citizens of Cincinnati retain the right further to amend the City Charter and to provide for an elected legislature known as City Council in any fashion that a majority of the voters deem appropriate. The power to determine the nature of the legislature in a city charter may be traced back to the Constitution of Ohio which has been in effect for over eighty years.

The issues before this court are: 1) does the Plaintiff have standing to bring this matter and 2) if she does have standing, does the referendum violate her constitutional rights under the United States and Ohio Constitutions.

### A. Standing

Article III of the United States Constitution provides that parties attempting to invoke federal court jurisdiction must allege an actual case or controversy. *O'Shea v. Littleton,* 414 U.S. 488, 493–94, 94 S.Ct. 669, 674–75, 38 L.Ed.2d 674 (1974); *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968). Thus, it is a threshold requirement that a plaintiff allege that [s]he has "sustained or is in immediate danger of sustaining some direct injury." *Massachusetts v. Mellon,* 262 U.S. 447, 448, 43 S.Ct. 597, 588, 67 L.Ed. 1078 (1923). Furthermore, "[t]he injury must be both 'real and immediate', not 'conjectural' or 'hypothetical'." *O'Shea v. Littleton, supra.*

The Plaintiff argues that she has standing via the "capable of repetition, yet evading review" ripeness doctrine. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The city of Cincinnati and county defendants claim that Plaintiff is raising only a general voting issue on behalf of herself and that she is raising potential claims of council members for whom she has no right to raise such claims. In either case, her standing claim will not withstand constitutional scrutiny.

█ In the case of *Zielasko v. State of Ohio,* 873 F.2d 957 (6th Cir.1989), Judge Zielasko, who was over seventy years of age·

and a registered voter who supported Judge Zielasko, Ms. Bowman, brought an action challenging the constitutionality of an Ohio constitutional provision precluding the election or appointment of any judicial officer over the age of 70. The State argued that Zielasko and Bowman did not have standing because no action was taken to promote Zielasko's candidacy or to secure his place on the ballot. However, the Court determined that Zielasko had standing because to have promoted his candidacy would have caused him to run the risk of criminal penalty for 'election falsification' as he would have had to sign a document declaring he was under 70. Accordingly, fear of some certain legal penalty may constitute an actual harm or injury sufficient to save a case from dismissal where dismissal is sought on the ground that no actual case or controversy exists. *Zielasko,* at 959. Bowman's standing was recognized through Zielasko.

█ In this case no such harm can be found. The Plaintiff is merely asserting a general complaint that a candidate she may want to vote for will not be eligible for the ballot. She has no close relationship to, or any personal stake in the claim made. At best Plaintiff shares a political harm with every other voter in the City of Cincinnati.

The Plaintiff's argument that this is an issue which is "capable of repetition, yet evading review" is unpersuasive. The City Charter is not a static document but rather one that will change from time to time. It is likely, indeed probable, that there are few changes within that charter that do not upset someone or some segment of the population of Cincinnati. It is not the function of the Federal courts to review each amendment voted on in a general election at the behest of the losing minority. Undoubtedly, there are voters who are unhappy with the outcomes from elections, however, their unhappiness does not rise to the level of a constitutional violation.

Accordingly, the Plaintiff has suffered no harm, nor will she suffer any harm greater than that of any other voter in Hamilton County or in the City of Cincinnati, that would provide her with standing in this litigation.

## B. The Constitutionality of Term Limitations

Even if the Plaintiff were to be successful in showing standing, she would still fail on the merits of this case. The Plaintiff claims that Issue 5 is unconstitutional in that it violates her First and Fourteenth Amendment rights. In the inquiry into an Equal Protection claim, the threshold question is generally, should the term limitation be tested under the rational basis or compelling state interest standard of review. *Manson v. Edwards,* 482 F.2d 1076, 1077 (6th Cir.1973). "The Supreme Court has explained the two tests and their application to state legislation as follows:

> The Equal Protection Clause allows the States to considerable leeway to enact legislation that may appear to affect similarly situated people differently. Legislatures are ordinarily assumed to have acted constitutionally. Under traditional equal protection principles, distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the States goals and only if no grounds can be conceived of to justify them. *See, e.g. McDonald v. Board of Election Comm'rs,* 394 U.S. 802, 808–809, [89 S.Ct. 1404, 1408,] 22 L.Ed.2d 739 (1969); *McGowan v. Maryland,* 366 U.S. 420, 425–426, [81 S.Ct. 1101, 1104–1105,] 6 L.Ed.2d 393 (1961). We have departed from traditional equal protection principles only when the challenged statute places burdens upon "suspect classes" of persons or on a constitutional right that is deemed to be fundamental." *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 17, [93 S.Ct. 1278, 1288,] 36 L.Ed.2d 16 (1973).

> Thus, we must first determine whether the provisions challenged in this case deserve 'scrutiny' more vigorous than that which the traditional principles would require. *Clements v. Fashing,* 457 U.S. 957, 962–963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982).

*Zielasko v. State of Ohio,* 693 F.Supp. 577 (N.D.Ohio 1988).

The problem this court faces is how to harmonize the Supreme Court rulings that Plaintiff is not a member of a suspect class under the Equal Protection Clause and therefore, is tested under the rational basis standard with the Supreme Court rulings in ballot access cases where a voter's First Amendment rights are weaved with Equal Protection claims. There is "no litmus-paper test for separating those restrictions which are valid from those that are invidious under the Equal Protection Clause." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). The Supreme Court, however, has provided guidance. In *Anderson, et al. v. Celebrezze, Secretary of State of Ohio,* 460 U.S. 780, 786, 103 S.Ct. 1564, 1568, 75 L.Ed.2d 547 (1983), the Court established the following analysis to be applied:

> "Constitutional challenges to specific provisions of a State's election laws ... [are to be resolved by the Court] ... first considering the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. [The Court] must then identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, [the Court] also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." *Anderson* at 789, 103 S.Ct. at 1570.

### Application of the *Anderson* Test

■ The first prong of the *Anderson* test requires this court to consider the character and magnitude of the alleged injury to the rights protected by the First and Fourteenth Amendments. The second prong requires the identification and evaluation of the interests the city has put forth.

The Plaintiff claims that the City of Cincinnati's term limits ordinance is unconstitutional because it requires retrospective application and that the ordinance abridges plain-

tiff's first amendment right to freedom of association.

■ The First Amendment to the Constitution of the United States in its entirety provides as follows:

Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press, or of the right of the people peacefully to assemble, and to petition the government for a redress of grievances.

The First Amendment grants to voters the right to associate to express their views through their candidates and their votes. *Williams v. Rhodes*, 393 U.S. 23, 30–31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). "The rights of voters and . . . of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972). "Our primary concern is with the tendency of ballot access restrictions to limit the field of candidates from which voters might choose." *Anderson, et al. v. Celebrezze*, 460 U.S. 780, 786, 103 S.Ct. 1564, 1568, 75 L.Ed.2d 547 (1983), (*citing Bullock v. Carter*, 405 U.S. at 143, 92 S.Ct. at 855). In *Anderson*, the Supreme Court held that "the impact of candidate eligibility requirements on voters implicates basic constitutional rights." Writing for a unanimous Court in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958), Justice Harlan stated that it "is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process clause of the Fourteenth Amendment, which embraces freedom of speech." 460 U.S. at 786–787, 103 S.Ct. at 1568–69.

The Supreme Court first reviewed Ohio's electoral scheme in *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

The Court there defined the inseparable aspects of "liberty" affected by ballot access restrictions:

In the present situation the state laws place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both these rights, of course, rank among our most precious freedoms.

393 U.S. at 30–31, 89 S.Ct. at 10. "The exclusion of candidates . . . burdens voters' freedom of association, . . . .". *Anderson*, 460 U.S. at 787–788, 103 S.Ct. at 1569.

"Although the rights of voters are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates." *Anderson* at 788, 103 S.Ct. at 1569. In order for elections to be fair there must be, as a practical matter, substantial regulation. "To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes. Each provision of these schemes, whether it governs the registration or qualifications of voters, the selection or eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends. Nevertheless, *the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions.*" *Anderson* at 788, 103 S.Ct. at 1569 (emphasis added).[1]

It should be noted in this connection that there are limitations upon the holding of office in the Constitution of the United States. For example, Article I, Section 2, states:

No person shall be a representative who shall not have attained the age of twenty-five years and been seven years a citizen of

---

1. The Supreme Court has also upheld restrictions on candidate eligibility that serve legitimate State goals which were unrelated to the First Amendment. *See Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (incumbent Justice of the Peace may not seek election to state legislature; persons holding specified state and county offices are deemed automatically to resign from present office if they run for another elective office).

the United States and who shall not when elected be in inhabitant of that state in which he shall be chosen.

Article II, Section 1, of the United States Constitution provides in part:

No person except a natural born citizen or a citizen of the United States at the time of the adoption of this Constitution shall be eligible to the office of President. Neither shall any person be eligible to that office who shall not have attained to the age of thirty-five years and been fourteen years a resident within United States.

The right to vote is not an unlimited one and indeed two amendments to the United States Constitution have dealt with that right. Article XIX provides:

The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of sex. (Effective 1920)

Article XXVI provides in part:

The right of citizens of the United States who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any state on account of age. (Effective 1971)

The right to run for election is not an unlimited one. The Court notes again that no person who is adversely effected by this change in charter has joined the Plaintiff in any complaint that his or her rights have been impermissibly taken.

The Court further notes that in the State of Ohio the executive head, the Governor, is limited to two consecutive terms of office. Article II, Section 2, of the Constitution of Ohio provides in part as follows:

No person shall hold the office of Governor for a period longer than two successive terms of four years. (Amended November 2, 1954).

Such a restriction appears in over twenty other state constitutions.[2] The Twenty-second Amendment to the Constitution of the United States, Section 1, provides:

No person shall be elected to the office of the President more than twice.... (Effective 1951).

Surely the Plaintiff would not seriously urge that her First and Fourteenth Amendment rights have been abridged because she cannot elect a Governor more than twice or a President more than twice. It is difficult to see why these constitutional amendments are appropriate where an amendment to a charter which is likewise provided for the by Constitution is somehow unconstitutional. The Plaintiff chiefly relies on *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) for the proposition that Issue 5 must be held to a strict scrutiny standard of review. However, *Eu* is factually distinguishable from the case at bar. In *Eu*, the Supreme Court held that it was unconstitutional for the State of California to regulate the internal workings of the political parties and their members within the state. This clearly is violative of the freedom of association. Issue 5 in no way prevents the Plaintiff from associating with the political party of her choice. It is also different in the respect that it was a legislated change rather than one voted on by the members of the individual political parties.

■ The Plaintiff urges that the term limitation provision violates Article II, Section 28 of the Ohio Constitution because of its retroactive application. Therefore an examination of whether or not Issue 5 is retroactive within the meaning and application of Section 28 of Article II is necessary. An Ohio case, *The State ex rel. McGovern v. Board of Elections of Cuyahoga County, et al.*, 24 Ohio Misc. 135, 53 O.O.2d 147, 263 N.E.2d 586 (1970), examined that very issue. The holding in that case reads in pertinent part:

"Retroactive laws have been defined as those which take away a vested right, or impose a new obligation or duty or disability with respect to transactions already passed. The obvious protection of this constitutional provision was to prevent the impairment of existing contractual obligations or legal rights.... It has been

---

**2.** *See, e.g.,* Constitution of Florida, Art. IV § 5, Constitution of West Virginia, Art. VII § 4, Constitution of Pennsylvania, Art. IV § 3, and Constitution of Virginia, Art. V, § 1.

held ... that the holding of public office is a privilege, not a vested right. 'The people giveth and the people can taketh away.'

It must be noted that this case is not analogous to the situation where a legislative body, by statute, attempts to change salaries or terms of office of elected officials in contravention of specific constitutional provisions. The charter of a municipality is its constitution.... Therefore, the type of city officer, their salaries and their terms are purely an administrative municipal matter and the people could and should be given all necessary powers to decide these matters for themselves.

The framers of the Constitution realized, in their wisdom, that local needs vary from community to community and therefore allowed these municipalities by 'constitutional amendment' to exercise all powers of local self-government. It can, therefore, first of all, be reasonably concluded that the word 'retroactive' is not per se obnoxious but must be interpreted in the light of its specific application."

*The State ex rel. McGovern v. Board of Elections of Cuyahoga County, et al.*, 24 Ohio Misc. 135, 137–138, 53 O.O.2d 147, 148–49, 263 N.E.2d 586, 587–588 (1970). Accordingly, the retroactive application used in this situation is not the kind contemplated by the General Assembly of the State of Ohio and falls outside the purview of Article II, Section 28.

■ The City, on the other hand advances legitimate and even compelling reasons for this additional condition for candidate eligibility. The City of Cincinnati has a significant interest in incumbency reform in comparison to the minor effects felt by the Plaintiff. The City actor has a compelling interest in preserving the integrity of its election process. *Rosario v. Rockefeller*, 410 U.S. 752, 761, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973); *See also Eu v. San Francisco Democratic Comm.*, 489 U.S. 214, 231, 109 S.Ct. 1013, 1024, 103 L.Ed.2d 271 (1989). "The universal authority is that restriction upon the succession of incumbents serves a rational public policy and that, while restrictions may deny qualified men an opportunity to serve, as a general rule, the overall health of the body politic is enhanced by limitations on continuous tenure." *Maloney v. McCartney et al.*, 159 W.Va. 513, 517, 223 S.E.2d 607, 611 (1976), *appeal dismissed sub nom. Moore v. McCartney*, 425 U.S. 946, 96 S.Ct. 1689, 48 L.Ed.2d 190 (1976); *citing Maddox v. Fortson*, 226 Ga. 71, 172 S.E.2d 595, *cert. denied* 397 U.S. 149, 90 S.Ct. 999, 25 L.Ed.2d 183 (1970). The *Maloney* case, *Supra*, critiqued succinctly reasons for incumbent limitations:

The reasons for limitations upon the right of incumbents to succeed themselves have their origin in the political structure of yesteryear when direct access by the candidates to voters was circumscribed by poor communications, illiteracy and indifference. The power of incumbent officeholders to develop networks of patronage and attendant capacities to deliver favorably disposed voters to the polls raised fears of an entrenched political machine which could effectively foreclose access to the political process. Consequently, while a political party, a political philosophy, or even countless thousands of appointed governmental executives and employees could continue from administration to administration, it was thought that regular changes in the chief executive would stimulate criticism within political parties for the purpose of attracting attention among political parties by providing occasions on which entrenched machines would be so disrupted by internecine strife as to insure a meaningful, adversary and competitive election. *Maddox v. Fortson, supra.*

*Maloney* 159 W.Va. at 518, 223 S.E.2d 607.

Issue 5, as a part of the city of Cincinnati's charter which provides that a member of city council may not sit for more than four consecutive two-year terms, does not violate the First or Fourteenth Amendment of the United States Constitution nor the Constitution of the State of Ohio because it does not create an invidious class distinction, it does not violate the retroactive clause in Ohio's Constitution, it does not unreasonably restrict the franchise and it serves a legitimate and perhaps compelling public policy.

### Conclusion

Upon a consideration of the foregoing, the Court determines that the Defendants are entitled to judgment as a matter of law and such judgment is hereby rendered at Plaintiff's costs.

IT IS SO ORDERED.