**Helen DUTMER, Plaintiff,**

v.

**CITY OF SAN ANTONIO, TEXAS, Defendant.**

**Civil Action No. SA-95-CA-764.**

United States District Court, W.D. Texas, San Antonio Division.

Aug. 19, 1996.

588

Christian Joe Gros, San Antonio, TX, for plaintiff.

William Wendell Hall, Fulbright & Jaworski, San Antonio, TX, Renee A. Forinash, Fulbright & Jaworski L.L.P., San Antonio, TX, for defendant.

## ORDER

BIERY, District Judge.

A case of first impression addressing the legality of term limits for council members of Texas home rule cities [1] presents this issue:

Motivated by frustration with their political institutions, can citizens of a Texas home rule city legally trade a part of their birthright (the less fettered power to choose their rulers) for a mess of pottage (de facto government by unelected albeit capable and dedicated career public servants)?

Invoking the account of Esau [2] and for the reasons stated below, this Court answers in the affirmative.

It is appropriate to begin with what this matter is not: a political philosophy debate about the merits and demerits of term limits. On this, reasonable minds have differed since the founding of the Republic. *Compare* Letter from Thomas Jefferson to James Madison (Dec. 20, 1787), *in* VI THE WRITINGS OF THOMAS JEFFERSON 385, 389 (Andrew Lipscomb & Albert Bergh eds., 1903) ("I dislike and strongly dislike [in the new Constitution] the abandonment, in every instance, of the principle of rotation in office....") *with* THE FEDERALIST No. 53 (James Madison) ("No man can be a competent legislator who does not add ... a certain degree of knowledge ... acquired by means of ... actual experience in the station which requires the use of it.") *with* THE RECORDS OF THE FEDERAL CONVENTION OF 1787, 632–33 (Max Farrand ed., 1937) (Elbridge Gerry [of gerrymandering fame] listed "the duration and re-eligibility of the Senate" as reason for not signing Constitution); *cf.* David Broder, Washington Post Writers Group, *The Problem of Term Limits,* DALLAS MORNING NEWS, February 9, 1994, at 25A ("Moving legislation ... takes experience, the one commodity that the term-limits are determined to eliminate from legislative bodies."); GEORGE F. WILL, RESTORATION: CONGRESS, TERM LIMITS AND THE RECOVERY OF DELIBERATIVE DEMOCRACY 3 (1992) (term limits necessary to restore government to competence); Rick Casey, SAN ANTONIO LIGHT, July 12, 1990 (opposing term limits because of too much power with city staff); T.R. Fehrenbach, THE SAN ANTONIO EXPRESS NEWS, May 22, 1994 (term limits are "our best long-range hope for incisive reform of

---

1. At least seventy Texas cities and towns have enacted term limit provisions for council members.

2. *Genesis* 25:29

government."). Indeed, the sovereign people of the United States exhibited ambivalence on the issue by electing Franklin Roosevelt four consecutive times to the presidency, but shortly thereafter imposed a two-term limit through appropriate processes of amending the Constitution.[3]

Moreover, this Court is not sitting in loco parentis to decide whether unlimited or limited service on a city council results in better government for the citizenry. If history judges the term limits movement an idea whose time should not have come, the evolutionary experiment called democracy includes the right to make mistakes and, ultimately, delivers just about the kind of government voters deserve. On a personal note, this author finds inconsistency between the ideal of a well-informed electorate choosing its leaders and the reality of lazy reliance on term limits in lieu of the vigorous exercise of the right to vote for which so many paid so much. But of course it is not an ideal world. Further, it is doubtful that supporters of term limits seek to fly on commercial airships piloted by rookies to be intellectually consistent with their philosophy about the piloting of the ship of state.

What is before the Court is City of San Antonio Ordinance 73584 ("the Ordinance"), amending the city charter to include a term limitations provision,[4] and its legality in relationship to other higher constitutional and statutory provisions, both state and federal. The City of San Antonio is a home rule city. TEX. CONST. art. XI, § 5. As a general proposition, citizens of home rule cities may write their basic rules so long as charter provisions do not conflict with higher law. *Id.* For example, a city charter clearly could not prevent women from voting in city elections in contravention of the Nineteenth Amendment to the United States Constitution. This Court is petitioned to make the initial judicial determination of that relationship.

3. U.S. CONST. amend. XXII, § 1.

4. Ordinance 73584 provides: "No person shall be eligible for any elected position who has already served two full terms in that office." The

## BACKGROUND

The plaintiff, Helen Dutmer, a citizen who has given many years of service to the community as a San Antonio City Council Member and Bexar County Commissioner, filed as a candidate for an additional term on city council in excess of that allowed by Ordinance 73584. City Clerk Norma Rodriguez, following her duty to enforce the city charter, disallowed the filing. Mrs. Dutmer challenges the enforcement of the Ordinance, contending it is in conflict with and therefore must legally yield to higher authority because:

1) the term limits provision to the city charter violates section 2 of the Voting Rights Act;

2) the term limits provision violates plaintiff's First and Fourteenth Amendment rights guaranteed by the United States Constitution;

3) the term limits provision is unconstitutional because it imposes an additional eligibility requirement which is not expressly provided by the Texas Constitution and the laws of the State of Texas.

The defendant City of San Antonio contends Mrs. Dutmer has no standing under the Voting Rights Act to challenge the term limits amendment and further argues it is not precluded by the Texas Constitution and the United States Constitution from amending the city charter to adopt term limits for elected city council members.

## STANDARD OF REVIEW

Cross-motions for summary judgment have been filed. *See* FED.R.CIV.P. 56. When the parties proceed on the same material facts, a court will grant summary judgment only when the moving party is entitled to judgment as a matter of law. *Bricklayers Int'l Union Local No. 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir.1975); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). When faced with cross-

Ordinance passed in 1991, when a majority of San Antonio citizens in each of ten city council districts voted for the amendment by significant majorities.

motions, the court must consider each party's motion separately; each movant has the burden of presenting evidence to support its motion. *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir.1988).

## STANDING UNDER THE VOTING RIGHTS ACT

■ Notwithstanding preclearance of the term limits ordinance by the United States Department of Justice, Mrs. Dutmer asserts the provision violates section 2 of the Voting Rights Act. 42 U.S.C. § 1973b(f)(2). The purpose of the Voting Rights Act is to protect racial and language minorities against conduct from the majority which would abridge their right to vote. *Thornburg v. Gingles*, 478 U.S. 30, 43, 106 S.Ct. 2752, 2762, 92 L.Ed.2d 25 (1986); *Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir.1989); *see also Miller v. Johnson*, —— U.S. ——, ——, 115 S.Ct. 2475, 2483, 132 L.Ed.2d 762 (1995) (citing *Beer v. United States*, 425 U.S. 130, 141, 96 S.Ct. 1357, 1363–64, 47 L.Ed.2d 629 (1976)) ("[T]he purpose of [the Voting Rights Act] has always been to ensure that no voting-procedure changes would be made that would lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise.").[5]

Responding to plaintiff's voting rights allegation, the City of San Antonio contends Mrs. Dutmer is not a proper party and therefore has no standing to bring a voting rights claim. A party seeking to invoke federal jurisdiction must "allege facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute." *United States v. Hays*, —— U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (citing *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343 (1975)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61,

112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992). There are at least three elements of constitutional standing:

\* First, plaintiff must suffer an "injury in fact—an invasion of a legally protected interest, which is (a) concrete and particularized, and (b) actual and eminent, not conjectural or hypothetical."

\* Second, there must exist a causal connection between the injury and the conduct of which is complained.

\* Third, it must be likely, and not "merely speculative," that the injury will be redressed by a favorable decision.

*Hays*, —— U.S. at ——, 115 S.Ct. at 2435 (quoting *Lujan*, 504 U.S. at 560–61, 112 S.Ct. at 2136–37); *see also Barnett v. Daley*, 809 F.Supp. 1323, 1332 (N.D.Ill.1992).

■ The test for standing of a non-minority plaintiff in a Voting Rights Act cause of action was addressed in *Newman v. Voinovich*, 789 F.Supp. 1410, 1415 (S.D.Ohio 1992), *aff'd*, 986 F.2d 159 (6th Cir.), *cert. denied*, 509 U.S. 924, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993). *Newman* instructs that a plaintiff must show:

1) he or she has personally suffered or will suffer some distinct injury-in-fact as a result of defendant's putatively illegal conduct;

2) the injury can be traced with some degree of causal certainty to the defendant's conduct;

3) the injury is likely to be redressed by the requested relief;

4) the plaintiff must assert his or her own legal rights and interests, not those of a third party;

---

5. Section 1973(a) of the Voting Rights Act provides:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote *on account of race or color, or in contravention of the guarantees set forth in 1973b(f)(2) of this title,* as provided in subsection b of this section.

42 U.S.C. § 1973(a) (emphasis added). Section 1973b(f)(2) further provides:

> No voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote because he is a *member of a language minority group.* *Id.* at § 1973b(f)(2) (emphasis added).

5) the injury must consist of more than a generalized grievance that is shared by many; and

6) the plaintiff's complaint must fall within the zone of interests to be regulated or protected by the rule of law in question.

*Newman,* 789 F.Supp. at 1415 (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 471–77, 102 S.Ct. 752, 757–61, 70 L.Ed.2d 700 (1982)); *see also Singleton v. Wulff,* 428 U.S. 106, 113–14, 96 S.Ct. 2868, 2873–74, 49 L.Ed.2d 826 (1976) ("Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. Second, third parties themselves usually will be the best proponents of their own rights."); *see, e.g., Rollins v. Fort Bend Indep. Sch. Dist.,* 89 F.3d 1205 (5th Cir.1996); *League of United Latin Am. Citizens Council ("LULAC") v. Clements,* 999 F.2d 831 (5th Cir.1993), *cert. denied,* 510 U.S. 1071, 114 S.Ct. 878, 127 L.Ed.2d 74 (1994); *LULAC v. Midland Indep. Sch. Dist.,* 829 F.2d 546 (5th Cir.1987).

Because it is uncontroverted Mrs. Dutmer is not a member of a group protected by the Voting Rights Act, she cannot meet the standing requirements of having suffered an "injury-in-fact"; she has not alleged she has been denied the opportunity to participate in the electoral process by reason of her race or language. Mrs. Dutmer does allege the term limits provision has a "potential for creating inequities in the opportunities of minority and white voters to elect their preferred representatives." Assuming for the sake of argument such potential exists, allegation of some possible future harm does not present a controversy ripe for adjudication. *Laird v. Tatum,* 408 U.S. 1, 12–13, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972).

This Court holds Mrs. Dutmer is not a proper party under the Voting Rights Act and therefore has no standing to assert a voting rights violation. The Court does not reach the substance of the allegations. Summary judgment is granted in favor of the City of San Antonio without prejudice to the pursuit of voting rights claims by a proper party.

## THE CONSTITUTIONALITY OF TERM LIMITS

**A.** *The Ordinance in Relation to the United States Constitution*

■ Mrs. Dutmer asserts Ordinance 73584 violates her First and Fourteenth Amendment rights. Though the Supreme Court has not determined the constitutionality of term limits upon municipal elected officials, it has provided a framework for evaluation of state election laws. *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983). This analysis requires balancing the magnitude of the asserted injury to a plaintiff's federal constitutional rights against the precise interest asserted by the state to justify the election law. *Id.* (referred to as the "two-prong test"). When evaluating the defendant's interests, lower courts must consider the legitimacy and strength of the state's interests and the extent to which those interests make necessary the burden on plaintiff's rights. A state's "important regulatory interests generally are sufficient to justify reasonable, nondiscriminatory restrictions." *Id.* at 788, 103 S.Ct. at 1570; *see also Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992). Even though the right to vote is fundamental, compared to the non-fundamental right of candidacy, not all candidate restriction rules "impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates." *Anderson,* 460 U.S. at 788, 103 S.Ct. at 1569; *see also Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843–44, 73 L.Ed.2d 508 (1982) (right to candidacy is not fundamental right).

To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes. Each provision of these schemes, whether it governs the registration and qualifications of

voters, the selection or eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends. Nevertheless, the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions.

*Anderson,* 460 U.S. at 788, 103 S.Ct. at 1570.

*Miyazawa v. City of Cincinnati,* 825 F.Supp. 816 (S.D.Ohio 1993), *aff'd,* 45 F.3d 126 (1995), is instructive. Plaintiff argued an amendment to the city charter limiting the terms of city council members was unconstitutional under the First and Fourteenth Amendments of the United States Constitution and the Ohio Constitution. *Miyazawa,* 825 F.Supp. at 819. The First Amendment grants voters the right to associate to express their views through their candidates and their votes, but there must be as a practical matter substantial regulation in order for elections to be fair. *Id.* at 820. The Fourteenth Amendment guarantees equal treatment under the law, but the right to run for office is not an unlimited one. *Id.* at 821. To determine whether the term limits violated plaintiff's constitutional rights, the court applied the two-prong test of *Anderson. Id.* at 819–23 (citing *Anderson,* 460 U.S. at 789, 103 S.Ct. at 1570). First considered was the character and magnitude of the alleged injury to the rights protected by the First and Fourteenth Amendments. *Miyazawa,* 825 F.Supp. at 819–22. Second, the interests of the city were identified and evaluated. *Id.* at 822–23. The term limit was held constitutional under the First and Fourteenth Amendments because it served a legitimate public policy in incumbency reform without creating an invidious class distinction or unreasonably restricting voters' freedom of association. *Id.* at 823; *see also League of Women Voters v. Diamond,* 923 F.Supp. 266, 268 n. 2 (D.Me.1996) ("[N]o lower court to have examined the constitutionality of term limits ... has found them to violate First or Fourteenth Amendment rights").

*1. Application of the First Anderson Prong: The Character and Magnitude of the Alleged Injury.*

This Court also looks to *Anderson,* 460 U.S. at 789, 103 S.Ct. at 1570.[6] In the Constitution, as in the challenged Ordinance, there are limitations upon the holding of federal office and the right to vote:

* U.S. CONST. art. I, § 2, cl. 2:

  Representative must attain the age of twenty-five years and be a United States citizen for seven years.

* U.S. CONST. art. II, § 1, cl. 4:

  Only a natural born citizen, who has attained the age of thirty-five years and been fourteen years a resident is eligible to hold office of President of the United States.

* U.S. CONST. amend. XXVI, § 1:

  Citizens under eighteen years of age are denied the right to vote.

Not unlike the alleged injury here—the lifetime ban passed by San Antonio voters—the right to run for federal election is not an unlimited one: "[n]o person shall be elected to the office of the President more than twice...." U.S. CONST. amend. XXII, § 1.

Sovereignty emanates from the people. *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 403, 4 L.Ed. 579 (1819) (Marshall, C.J.) ("[T]he Constitution derives its whole authority ... from the people"). If these voluntary relinquishments of sovereignty by the people in their national government are reasonable restrictions, this Court cannot divine a federal constitutional basis to hold local government Ordinance 73584 unreasonable.

Moreover, there is no indication the term limits provision creates an invidious class distinction. The Ordinance affects all registered voters in San Antonio and no identifiable group—distinct from San Antonio voters at large—is adversely or uniquely impacted. The same principle is true when applying the term limitation provision from a candidate's perspective. *See Miyazawa,* 825 F.Supp. at 822.

6. The Court is aware no voter challenges the constitutionality of Ordinance 73584. However, as evidenced by the discussion herein, the rights of candidates and the rights of voters are intertwined. *See Anderson,* 460 U.S. at 787–88, 103 S.Ct. at 1569–70.

**2.** *Application of the Second Anderson Prong: Identification and Evaluation of Interests.*

Although opponents of term limits have the right to disagree and convince voters to join them, the City of San Antonio advances legitimate reasons for the majority passage of limits on candidate eligibility.[7] The Court holds plaintiff has not met her burden of showing the alleged injury to her federal constitutional rights outweighs the interests asserted by the City to justify term limits. Accordingly, the Ordinance does not violate the First or Fourteenth Amendments. *See Anderson,* 460 U.S. at 789, 103 S.Ct. at 1570.

**B.** *The Ordinance in Relation to the Texas Constitution and Texas Statutes*

■ Mrs. Dutmer contends the Ordinance must yield to higher authority of the Texas Constitution and Texas Election Code. Although the Court is unaware of any living person who has read the entire Texas Constitution, counsel submitted what is believed to be the relevant state constitutional and statutory provisions regarding candidate eligibility:

TEX. CONST. art. 16, § 2:

Laws shall be made to exclude from office ... those who may have been or shall hereafter be convicted of bribery, perjury, forgery, and other high crimes.

TEX. CONST. art. 16, § 5:

Every person shall be disqualified from holding any office of profit, or trust, in this State, who shall have been convicted of having given or offered a bribe to procure his election or appointment.

TEX. CONST. art. 11, § 5:

The adoption or amendment of charters is subject to such limitations as may be prescribed by the Legislature, and no charter or any ordinance passed under said char-

ter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State.

TEX. CONST. art. 11, § 11:

A Home Rule City may provide by charter or charter amendment ... for a longer term of office than two (2) years for its officers, either elective or appointive, or both, but not to exceed four (4) years....

TEX. CONST. art. 3, § 19:

No judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall during the term for which he is elected or appointed, be eligible to the Legislature.

TEX.ELEC.CODE ANN. § 141.001 (Vernon 1986):

(a) To be eligible to be a candidate for, or elected or appointed to, a public elective office in this state, a person must:

(1) be a United States citizen;

(2) be 18 years of age or older on the first day of the term to be filled ...;

(3) have not been determined mentally incompetent ...;

(4) have not been finally convicted of a felony ...;

(5) have resided continuously in the state for 12 months ...; and

(6) *satisfy any other eligibility requirements prescribed by law for the office.* (emphasis added).

TEX.ELEC.CODE ANN. § 141.003(a) (Vernon 1986):

Different age and residence requirements from those prescribed by Section 141.001 may be prescribed by a home-rule city charter, but a minimum age may not be more than 21 years and a minimum length of residence in the state or city may not be more than 12 months immediately preceding election day.

---

7. The City's policy arguments for term limits include:

1) The City has a compelling interest in preserving the integrity of its election process. *Rosario v. Rockefeller,* 410 U.S. 752, 761, 93 S.Ct. 1245, 1251–52, 36 L.Ed.2d 1 (1973);

2) Term limits reduce the advantages enjoyed by incumbents at the polls and promote new candidates to run for office. *League of*

*Women Voters v. Diamond,* 923 F.Supp. 266, 272 (D.Me.1996);

3) Restriction upon succession of incumbents dislodges entrenched political leadership and curbs power of special interest groups. *State ex rel. Maloney v. McCartney,* 159 W.Va. 513, 517, 223 S.E.2d 607, 611–12 (1976), *appeal dismissed,* 425 U.S. 946, 96 S.Ct. 1689, 48 L.Ed.2d 190 (1976).

TEX.LOCAL GOV'T CODE ANN. § 26.041 (Vernon 1988):

The municipality may:

(1) create offices;

(2) determine the method for selecting officers; and

(3) *prescribe the qualifications, duties, and tenure of office for officers.* (emphasis added).

Perforce, the Texas Constitution provides a prescription of prohibitions and preclusions preventing perjurers, perverts, "preverts," purloiners, purse-snatchers, polygamists and parolees from performing in public office. In addition to the negative state constitutional provisions, the statutory election code states in a positive manner the qualifications to be met by a candidate; however, these are non-exclusive. TEX.ELEC.CODE ANN. § 141.001(a)(6) (Vernon 1986); TEX.LOCAL GOV'T CODE ANN. § 26.041 (Vernon 1988).

Analysis and interpretation of the legal relationship between Texas home rule cities and the State of Texas calls for guidance from the jurisprudence of Texas courts:

* *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 489, 490 (Tex.1993) (home rule cities have broad discretionary powers and may enact any provision, whether through ordinance or charter amendment, which is not in direct conflict with the constitution or general laws of Texas);

* *Haynes v. City of Abilene,* 659 S.W.2d 638, 640 (Tex.1983) (city ordinance presumed to be valid and burden of proof is on party seeking to invalidate it);

* *City of Brookside Village v. Comeau,* 633 S.W.2d 790, 792 (Tex.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982) (charters of home rule cities presumed valid and courts shall interfere only if provisions are unreasonable and arbitrary, amount to clear abuse of municipal discretion); *see also Walters v. National Ass'n of Radiation Survivors,* 468 U.S. 1323, 105 S.Ct. 11, 82 L.Ed.2d 908 (1984) (statutes presumed constitutional);

* *Lower Colo. River Auth. v. City of San Marcos,* 523 S.W.2d 641, 645 (Tex.1975) (although broad powers of home rule cities are constrained by the constitution, statutes and city charters, limitation on power of home rule city will not be implied unless provisions are clear and compelling);

* *Hunt v. City of San Antonio,* 462 S.W.2d 536, 539 (Tex.1971) (city ordinance presumed valid and courts must not interfere unless ordinance is arbitrary, unreasonable, and clear abuse of municipal authority);

* *State ex rel. Rose v. La Porte,* 386 S.W.2d 782, 785 (Tex.1965) (cities look to acts of the legislature not for grants of power, but only for limitations on their powers);

* *Barnett v. City of Plainview,* 848 S.W.2d 334, 338 (Tex.App.—Amarillo 1993, no writ) (home rule cities look to act of legislature not for grant of power, but only for limitations on power);

* *City of Beaumont v. Bond,* 546 S.W.2d 407, 409–10 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.) (home rule cities have full authority to take whatever actions the legislature could have granted them the power to perform);

* *Royal Crest, Inc. v. City of San Antonio,* 520 S.W.2d 858, 865 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.) (home rule cities have broad discretionary power to amend charters in any manner consistent with state constitution and general laws of state).

The Court is aware of other states in the laboratory of democracy in which municipalities have passed term limits provisions, only to have them invalidated by state courts in those jurisdictions.[8] For example, *Minneapolis Term Limits Coalition v. Keefe,* 535 N.W.2d 306, 309 (Minn.1995), held the proposed amendment to limit terms went beyond the legislative authority granted by the Minnesota Constitution. Although Article XII, Section 3 of that constitution authorized

---

8. Although not involving municipal term limits, in *United States Term Limits, Inc. v. Thornton,* — U.S. —, —, 115 S.Ct. 1842, 1847–71, 131 L.Ed.2d 881 (1995), the Supreme Court held unconstitutional an amendment to the Arkansas constitution which precluded persons who served a certain number of terms in the United States Congress from having their names placed

the establishment of "qualifications" for office, the court found a "term limit" to be an "eligibility" requirement, the addition of which was not authorized under Article VII, Section 6 of the state's constitution. *Id.* Minnesota does not have language similar to TEX.LOCAL GOV'T CODE ANN. § 26.041 (Vernon 1988), allowing a city to "prescribe the qualifications, duties, and tenure of office for officers" and TEX.ELEC.CODE ANN. § 141.001(a)(6) (Vernon 1986), allowing a city to legislate "other eligibility requirements" for elected office. *See generally Cottrell v. Santillanes,* 120 N.M. 367, 371, 901 P.2d 785, 789 (App.), *cert. denied,* 120 N.M. 213, 900 P.2d 962 (N.M.1995); *Polis v. City of La Palma,* 10 Cal.App.4th 25, 26–30, 12 Cal. Rptr.2d 322, 323–25 (1992); *Steinkamp v. Teglia,* 210 Cal.App.3d 402, 404–05, 258 Cal. Rptr. 265, 266–67 (1989); *Younger v. Board of Supervisors,* 93 Cal.App.3d 864, 867–73, 155 Cal.Rptr. 921, 923–27 (1979) (cases invalidating term limit ordinances). Those cases are distinguishable because of state constitutional and statutory provisions different from the Texas scheme.

Other courts have held term limits constitutional based upon language similar to the Texas Constitution and statutes. In *Roth v. Cuevas,* 158 Misc.2d 238, 248, 603 N.Y.S.2d 962, 969, *aff'd,* 82 N.Y.2d 791, 604 N.Y.S.2d 551, 624 N.E.2d 689 (1993), the court held the proposed amendment to limit terms of office of elected city officials was not beyond the legislative authority granted by the New York Constitution and Municipal Home Rule Law providing for local governments to retain the power to adopt and amend municipal laws relating to "[t]he powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees."

This Court holds San Antonio Ordinance 73584 is not unharmonious with Texas constitutional and statutory authority.

on the ballot for election to Congress. The Court explained that states may not impose qualifications for offices of United States representative or United States senator in addition to those set forth by the federal constitution. *Id.* at ——, 115 S.Ct. at 1871. *Thornton* is distinguishable because:
1) Ordinance 73584 does not seek to impose limits on State legislators analogous to a

## CONCLUSION

Those who believe the Ordinance a malignancy on the body politic may have to await the appearance of symptoms to attempt persuasion of a majority to perform corrective surgery at the ballot box. The Court has addressed voting rights standing and has applied the appropriate standards of review, presumptions of validity and burdens of proof. The Court does not find Ordinance 73584 constitutionally or statutorily unreasonable, capricious, arbitrary or invidiously and illegally discriminatory. Defendant's Motion for Summary Judgment is GRANTED and plaintiff's Motion for Summary Judgment is DENIED without prejudice to a proper party asserting a Voting Rights Act claim.

JUDGMENT IS ORDERED ENTERED in favor of the City of San Antonio.

state imposing limits on a member of Congress as in *Thornton;* and
2) The Texas Constitution and statutes cited herein do not deny and explicitly reiterate the power to define the tenure of office for municipal officials. TEX.LOCAL GOV'T CODE ANN. § 26.041 (Vernon 1988).